2011 UT App 112

**STATE of Utah, Plaintiff and Appellee,**

v.

**Rudd MARTIN, Defendant and Appellant.**

**No. 20090814–CA.**

Court of Appeals of Utah.

April 14, 2011.

Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

MEMORANDUM DECISION

DAVIS, Presiding Judge:

¶1 Rudd Martin appeals his conviction for possession of methamphetamine, a third degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i), (b)(ii) (Supp.2010), arguing that the evidence was insufficient to prove that he constructively possessed methamphetamine discovered in the back seat of a patrol car where he had been detained. We affirm.

"The standard of review for a sufficiency claim is highly deferential to a jury verdict." *State v. Workman*, 2005 UT 66, ¶29, 122 P.3d 639. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict and will reverse the jury's decision "only if we determine that reasonable minds could not have reached the verdict." *See id.* (internal quotation marks omitted).

¶2 "[A]ctual physical possession is not necessary to convict a defendant of possession of a controlled substance. A conviction may also be based on constructive possession." *State v. Fox*, 709 P.2d 316, 318–19 (Utah 1985) (citation omitted).

> To find that a defendant had constructive possession of a drug or other contraband, it is necessary to prove that there was a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug.

*Id.* at 319. The existence of such a nexus depends on the particular circumstances of the individual case. *See id.* Martin argues that there was insufficient evidence that he constructively possessed the methamphetamine because other individuals had access to the back seat of the patrol car, his fidgeting was reasonably explained by the pain in his wrist, he made no incriminating statements and requested a drug test, his fingerprints were not found on the baggy, and he was searched prior to being put in the patrol car.

¶3 Although Martin did not have exclusive access to the back seat of the patrol car, there is sufficient additional evidence indicating that the methamphetamine belonged to him to support a jury verdict. *See generally State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct.App.1991) ("A sufficient nexus is not established by mere ownership and/or occupancy of the premises upon which the drugs [were] found ... especially when occupancy is not exclusive.... In order to find that the accused was in possession of drugs found in an automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference." (alteration and first omission in original) (citations and internal quotation marks omitted)). Martin was the only person to occupy the back seat between the time the officer searched the patrol car at the beginning of his shift and the time the officer found the methamphetamine, and the drugs were found in the same area where Martin's hands had been. *See generally Fox*, 709 P.2d at 319 (listing "presence of drugs in a specific area over which the accused had control" as a factor that may indicate constructive possession). Additionally, Martin was moving around suspiciously in the back seat: the officer felt the car moving and observed that Martin was "leaning forward and fidgeting around," and that Martin "bumped his head on the ... cage that separates the front seats from the back seats." *See generally id.* (listing "incriminating behavior of the accused" as a factor that may indicate constructive possession). Furthermore, when the officer opened the back door to move Martin into the sergeant's vehicle, Martin's left hand was in his left front pants pocket and coins from his pocket had spilled out onto the floor. All of this behavior raised the suspicion of the officer, who testified, "It's been my experience that people in the back seat tend to try to secret or hide things into that crack. And a lot of times when they are moving they're either trying to do that or trying to slip their cuffs somehow."

¶4 Martin testified at trial that he was changing position to make his wrists more comfortable because the handcuffs were too tight and his right wrist had previously been broken. However, it was the jury's prerogative to evaluate the credibility of his testimony, and we will not second-guess that evaluation. *See State v. Workman*, 852 P.2d 981,

984 (Utah 1993) ("[T]he jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence."). Furthermore, Martin's explanation is undermined by the fact that he did not indicate to either the sergeant or the officer that the handcuffs were too tight or that they were hurting his wrist, and the fact that he had to twist his allegedly painful right wrist around to the other side of his body in order to get his left hand into his left pocket.

¶ 5 The lack of incriminating statements made by Martin and the fact that his fingerprints were not found on the baggy, while certainly not indicative of guilt, do not prove that the baggy did not belong to Martin. It was the jury's responsibility to assign weight to this evidence in assessing the circumstances in their entirety. *See id.* Thus, these factors do not undermine the jury verdict where there was sufficient additional evidence to support it, *see supra* ¶ 4.

¶ 6 Finally, Martin argues that a reasonable jury could not have determined beyond a reasonable doubt that the drugs belonged to him because he was searched prior to being put in the patrol car. Martin asserts that it was just as likely that the officer missed the drugs when searching the back seat prior to his shift as that the sergeant missed them when he searched Martin's person. However, the evidence presented at trial suggested that the search of the vehicle was more thorough than the search of Martin. The officer testified that in searching the patrol car, he removed the bottom cushion of the back seat, allowing him to see down to the metal floor below, and he ran his hand across the crack of the backrest. Given that the drugs were not well hidden but were discovered "tucked into the backrest just barely under the backrest," they presumably would have been discovered in the search described by the officer if they had been there at that time. On the other hand, evidence at trial highlighted the limitations of a search of a person conducted incident to arrest. The sergeant testified that in searching a person under arrest he "check[s] pockets, waistbands, legs, back, arms" but does not check "every conceivable hiding place that ... a person could hide something on their body." He testified that he had "missed items" when conducting a search "a couple times," specifically recalling "an incident where [he] missed drugs on a person ... and they were found later." He also testified that he knew of other officers who had missed small items when searching an individual and that it is easy to miss something soft, like a powder substance. Given this evidence, we cannot say that a reasonable jury could not have concluded beyond a reasonable doubt that the drugs had been in Martin's possession.

¶ 7 There was sufficient evidence in this case to support the jury's verdict that Martin constructively possessed the methamphetamine found in the patrol car. We therefore affirm.

¶ 8 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.