2015 UT App 120

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ARMANDO LUCERO,
Defendant and Appellant.

Opinion
No. 20131000-CA
Filed May 14, 2015

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 121909520

Joan C. Watt and Brenda M. Viera, Attorneys
for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶1 Defendant Armando Lucero appeals from four convictions that flow from the discovery of a sling backpack containing various contraband in a car Lucero was driving. He contends that the State presented insufficient evidence to establish that he constructively possessed the items inside the backpack. We agree and reverse those four convictions.

BACKGROUND

¶2 A police officer pulled Lucero over while he was driving with a female passenger. Lucero claimed to have recently bought

the car he was driving and produced a vehicle registration. He did not, however, know the registered owner. The officer was unable to contact the registered owner to verify this information, but the car had not been reported stolen. Because Lucero did not have a valid driver's license, the police officer decided to impound the car.

¶3   The officer then began an inventory search of the car. The first item he searched was a sling backpack that had been on the floor behind the front passenger seat. When the officer began to go through the backpack, Lucero stated that the backpack was not his.[1] Inside the backpack, the officer found a digital scale disguised as a pack of cigarettes, a false can of peanuts containing a plastic bag filled with drugs, a handgun (later discovered to be stolen) with the serial number filed off, and a package of thank-you notes. The officer also searched the passenger's purse and discovered drugs and drug paraphernalia.[2] A search of the passenger revealed more drugs hidden in her bra.

¶4   The car also contained a variety of household goods including a laundry basket filled with folded clothes, a broom, a hair dryer, several other bags of clothing, and a suitcase. Lucero claimed to have been transporting these items for an ex-girlfriend. The ex-girlfriend came to the scene to identify and claim her property; she did not claim the backpack. Officers had

---

1. There is some dispute as to the number and timing of Lucero's denials. Our analysis proceeds in line with the State's position that Lucero first denied owning the backpack "as soon as" the officer began "dealing with" it and before any contraband was found.

2. A bandana initially found by the officer in the passenger's purse was mistakenly returned to the sling backpack.

previously searched the items she claimed and had found no contraband.

¶5    Lucero was charged with and convicted of possession or use of a controlled substance, theft by receiving stolen property, possession of a dangerous weapon by a restricted person, and use or possession of drug paraphernalia. All of these charges were based upon the items found inside the backpack and relied on a theory of constructive possession.

## ISSUE AND STANDARD OF REVIEW

¶6    On appeal, Lucero contends that the State failed to adduce evidence sufficient for a reasonable jury to find that he constructively possessed the backpack's contents. When considering an insufficiency-of-the-evidence claim, we review the evidence and all reasonable inferences in the light most favorable to the jury's verdict. *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645. We may only reverse a guilty verdict for insufficient evidence when that evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crimes underlying the convictions. *Id.*

## ANALYSIS

¶7    At trial, the State relied on a constructive-possession theory. A defendant constructively possesses contraband when there is a sufficient nexus between the defendant and the contraband to permit an inference that the defendant had both the power and the intent to exercise dominion and control over it. *See State v. Fox*, 709 P.2d 316, 319 (Utah 1985). This fact-specific inquiry may consider whether the defendant owned or occupied the location where the contraband was found, whether the defendant had special or exclusive control over that area, any

incriminating statements or behavior by the defendant, and previous possession of similar contraband by the defendant. *Id.*; *State v. Workman*, 2005 UT 66, ¶ 32, 122 P.3d 639. This list is not exhaustive, nor is each factor always pertinent. *Workman*, 2005 UT 66, ¶ 32; *see also State v. Layman*, 1999 UT 79, ¶ 15, 985 P.2d 911, 914 ("[T]here is some danger in mechanically relying on a list of factors . . . when applying a generally-worded test, such as *Fox*'s statement of what is needed to show constructive possession."). "The final legal test is the most generally-worded one: . . . whether there was a sufficient nexus between the defendant and the [contraband] to permit a factual inference that the defendant had the power and the intent to exercise control over the [contraband]." *Layman*, 1999 UT 79, ¶ 15.

¶8 We, as well as the Utah Supreme Court, have had a number of opportunities to consider whether a particular evidentiary nexus was sufficient to establish constructive possession. For example, in *State v. Fox*, the defendant (Fox) shared a house with his brother. The police discovered marijuana plants growing in greenhouses attached to the house. 709 P.2d at 319. The Utah Supreme Court concluded that the nexus between the plants and Fox's brother was sufficient to establish the brother's constructive possession because he owned the house, his personal effects were found in the same room as the plants, and there was evidence that he intended to distribute marijuana. *Id.* at 320. In contrast, the supreme court held that the nexus between the plants and Fox himself was insufficient to support Fox's constructive-possession conviction. *Id.* Specifically, the supreme court concluded that while the evidence supported an inference that Fox knew of the grow operation, there was no evidence that he had any intent to possess the marijuana or had any intent to exercise dominion and control over it. *Id.* Accordingly, the evidence was insufficient to support Fox's constructive-possession conviction, and that conviction was reversed. *Id.*

¶9 In *State v. Layman*, a police officer pulled over a car at about three in the morning. 1999 UT 79, ¶ 6, 985 P.2d 911. Layman was at the wheel and accompanied by a passenger. *Id.* Layman's bloodshot eyes, fidgety demeanor, and erratic driving led the officer to suspect that Layman might be under the influence of a controlled substance. *Id.* ¶¶ 6–7. When the officer asked to search a pouch tucked into the passenger's waistband, the passenger looked to Layman who shook his head in the negative. *Id.* ¶ 8. The officer nonetheless searched the pouch and found drugs and drug paraphernalia. *Id.* Layman was convicted of two drug-related charges under a constructive-possession theory. *Id.* ¶ 11. The Utah Supreme Court explained that there was little evidence to suggest that Layman had the type of control over the passenger's person necessary to infer beyond a reasonable doubt that Layman knowingly and intentionally possessed the contraband in the pouch. *Id.* ¶ 16. According to the supreme court, the questioning look simply was not enough to demonstrate the power and intent to exercise control. *Id.* ("The only fact tending to prove [Layman's] control over [the passenger] is that she looked at him when the deputy requested to see the pouch and [Layman] shook his head in negative fashion. . . . Neither her presence in his vehicle, his erratic behavior after the traffic stop, nor his use of drugs at some earlier time make up for this critical lack of evidence."). As a result, Layman's convictions based on constructive possession were reversed. *Id.* ¶ 17.

¶10 In *State v. Gonzalez-Camargo*, police officers executed a search warrant on two apartments. 2012 UT App 366, ¶ 3, 293 P.3d 1121. At the time of the search, twelve to fourteen people were inside the four-unit building. *Id.* The defendant (Gonzalez-Camargo) and his girlfriend shared a bedroom in one of the searched apartments. *Id.* ¶¶ 6, 19. The search of the bedroom turned up a lockbox containing drugs. *Id.* ¶ 5. However, at trial, the officers could not agree on where in the bedroom the lockbox was first located. *Id.* ¶ 20. Gonzalez-Camargo was eventually

convicted of possessing the drugs based on a constructive-possession theory. *Id.* ¶ 12. On appeal, we explained that to establish constructive possession, "the defendant's joint occupancy of the premises where the controlled substance is discovered must be combined with other evidence sufficient to establish the defendant's knowing and intentional control over it." *Id.* ¶ 17. We noted that Gonzalez-Camargo was a co-occupant of the bedroom where the lockbox was found and that the State had not produced evidence establishing that the lockbox had been found commingled with his possessions. *Id.* ¶¶ 19–20. Thus, the only evidence suggesting that the lockbox belonged to Gonzalez-Camargo was (1) that he was present, along with twelve to fourteen other people, when it was found and (2) that he and his girlfriend shared the room where it was found. *See id.* ¶ 26. As a result, a jury could only speculate as to whether the lockbox belonged to Gonzalez-Camargo, his girlfriend, both of them, or neither. *See id.* We therefore vacated Gonzalez-Camargo's drug-possession conviction. *Id.*

¶11 In *State v. Salas*, police officers received an anonymous tip that Salas would be driving a certain vehicle and was in possession of cocaine. 820 P.2d 1386, 1387 (Utah Ct. App. 1991). Officers stopped the vehicle, which Salas and his wife co-owned. *Id.* As the car was pulling over, the passenger in the rear seat moved from the left side to the right side of the car. *Id.* The officers searched the seat the passenger vacated and discovered cocaine wedged between the bench and back cushion. *Id.* We concluded that the passenger's movement rendered the remaining evidence sufficiently inconclusive on the issue of whether Salas had the intent to exercise dominion and control over the cocaine. *Id.* at 1388. We noted that before the officers found the cocaine, Salas stated there was no cocaine in the vehicle, did not have any drugs or paraphernalia on his person, and did not try to escape. *Id.* at 1389. Thus, the only evidence linking Salas with the cocaine was his part-ownership of the vehicle, his presence in the vehicle, and the anonymous tip

(which was admitted into evidence only to explain why the officers had pulled Salas's vehicle over). *Id.* We explained that to establish a defendant's constructive possession of contraband found in a vehicle of which the defendant was not the sole occupant, there must be evidence beyond the presence of the contraband and the defendant in the same vehicle to buttress the inference. *Id.* at 1388. Because the evidence was insufficient to establish constructive possession, we reversed Salas's conviction. *Id.*

¶12    These cases provide that a nexus sufficient to establish constructive possession cannot be established solely by non-exclusive ownership or occupancy of the place where the contraband is found. *See id.*; *see also Spanish Fork City v. Bryan*, 1999 UT App 61, ¶ 9, 975 P.2d 501. In short, "[a] defendant's joint occupancy of the premises where the [contraband] is discovered must be combined *with other evidence* sufficient to establish the defendant's knowing and intentional control over [the contraband]." *Gonzalez-Camargo*, 2012 UT App 366, ¶ 17 (emphasis added); *see also State v. Ashcraft*, 2015 UT 5, ¶ 20 n.3 ("[I]f the only connection between a defendant and the contraband is bare title or mere occupancy of the area in which it is found, there may be substantial room for reasonable doubt as to whether the contraband belongs to the defendant. Such doubt may be especially substantial where other people with access to the area could have placed the contraband in the home or vehicle without the owner's knowledge, and thus the owner would have no power and intent to exercise dominion and control over it." (emphasis, citation, and internal quotation marks omitted)).

¶13    In cases involving co-ownership or co-occupancy, the quantum of "other evidence" needed to support an inference of power and intent to exercise dominion and control equals the quantum of evidence sufficient to eliminate reasonable doubt. In *State v. Workman*, police officers executing a federal fugitive

warrant discovered chemicals, equipment, and wall stains consistent with the production of methamphetamines in a bedroom. 2005 UT 66, ¶ 2, 122 P.3d 639. In the same bedroom, the officers found several items belonging to Workman (including her day planner and driver's license) on a bookshelf that also housed a plastic container holding drug paraphernalia. *Id.* ¶ 3. Workman initially admitted to sharing the bedroom with her boyfriend but later claimed she had moved out three weeks before the search. *Id.* ¶ 4. Workman was eventually convicted of possessing laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation under a constructive-possession theory. *Id.* ¶¶ 30–31. The Utah Supreme Court noted that shared occupancy of the house was insufficient by itself to establish the requisite nexus for constructive possession. *Id.* ¶ 33. However, the supreme court determined that "other evidence" existed that was sufficient for that purpose: Workman's personal items were intermingled with methamphetamine-production equipment in the bedroom, Workman admitted buying (for household purposes) some of the containers and glassware eventually used in the operation, and Workman admitted to previous use of methamphetamines. *Id.* ¶ 34. The supreme court concluded that the constructive-possession theory was sufficiently supported by the "other evidence" that went beyond mere co-occupancy, and therefore affirmed Workman's conviction. *Id.* ¶¶ 35–36.

¶14    In *State v. Ashcraft*, a majority of the Utah Supreme Court determined that the "other evidence" the State presented was sufficient to support a constructive-possession conviction. 2015 UT 5, ¶ 22. There, a police officer observed a pickup truck being driven twice through a motel parking lot known for frequent drug activity. *Id.* ¶¶ 2–3. The following night, the officer again observed the truck in the same motel parking lot. *Id.* ¶ 4. He began following the truck, without turning on his police lights, until it stopped. *Id.* The officer approached the truck and asked the driver, Ashcraft, whether he was the truck's registered

owner. *Id.* Ashcraft admitted that he was not and that he had borrowed it from the owner. *Id.* After Ashcraft and his passenger admitted that they lacked driver's licenses, the officer impounded the truck. *Id.* ¶ 5. As part of the impoundment process, the officer conducted an inventory search of the truck. *Id.* ¶ 7. In the bed of the truck, within reach of the cab's rear window, he found a green bag. *Id.* Without opening it, the officer asked Ashcraft who owned the green bag. *Id.* Ashcraft replied that he did not know who it belonged to and accused the officer of planting it in the truck bed. *Id.* His suspicions aroused, the officer searched the green bag and discovered several bottles of pills, over thirty plastic bags containing unknown substances, three glass pipes, two digital scales, and miscellaneous other drug paraphernalia. *Id.* A search of Ashcraft's person revealed $793 in cash and a knife with a tar-like substance on the blade similar to that found in the plastic bags. *Id.* ¶ 6. Ashcraft was convicted of, inter alia, possession of a controlled substance with intent to distribute and possession of drug paraphernalia. *Id.* ¶ 10. These convictions relied on theories of constructive possession. *Id.*

¶15 On appeal, Ashcraft contended that the evidence was not sufficient to support a jury finding that he constructively possessed the contents of the green bag, because the sole connection between the green bag and himself was his occupancy of the truck. *Id.* ¶ 21. A divided Utah Supreme Court disagreed, noting that Ashcraft had repeatedly driven around an area known for drug activity, had done so late at night and early in the morning, and had carried a large amount of cash. *Id.* The majority opinion further noted that the bag was within Ashcraft's reach and that Ashcraft had not only denied owning it but had also accused the officer of planting it before the officer even opened it. *Id.* Finally, the majority observed that the tar-like substances found on Ashcraft's knife and in the plastic bags

were identified, at least by the arresting officer, as heroin.[3] *Id.* ¶¶ 8–9, 21, 26. The majority concluded that the cumulative effect of these pieces of evidence was sufficient "other evidence," beyond Ashcraft's presence in the truck, to support the constructive-possession theory underlying the jury's ultimate verdict. *Id.* ¶ 22. Accordingly, the supreme court affirmed Ashcraft's convictions. *Id.* ¶¶ 30, 40.

¶16    Justice Parrish, joined by Justice Nehring, dissented. *Id.* ¶ 41 (Parrish, J., dissenting). The dissent first noted that the passenger and the truck's owner also had access to the green bag and that the bag's position rendered it more easily accessed by the passenger than by Ashcraft. *Id.* ¶¶ 45–46. The dissent then challenged three inferences relied upon by the majority's conclusion that an evidentiary nexus connected Ashcraft to the green bag. *Id.* ¶¶ 43, 47. First, the dissent did not agree that Ashcraft's late-night presence in an area known for drug activity with a large amount of cash created any nexus between him and the green bag.[4] *Id.* ¶ 48. Second, the dissent did not view Ashcraft's immediate accusation that the officer planted the bag as suggesting knowledge of its contents. *Id.* ¶ 49. Rather, the

---

3. While a field testing kit used by the officer indicated that the tar-like substance was an opiate and that a crystalline white substance in some of the plastic baggies was methamphetamine, none of the substances in the plastic bags or on Ashcraft's knife were conclusively identified through laboratory testing. *State v. Ashcraft*, 2015 UT 5, ¶ 8.

4. The majority opinion explained that "Ashcraft repeatedly drove through an area known for drug activity during late night and early morning hours." *Id.* ¶ 21. In apparent contrast, the dissenting opinion notes that the passenger was "seen in the truck both nights, while Mr. Ashcraft may have been driving the truck on only the second night." *Id.* ¶ 48 (Parrish, J., dissenting).

dissent suggested that Ashcraft's statement was "equally consistent with the possibility that the bag in fact belonged to [one of the passengers] and that Mr. Ashcraft intended to distance himself from it because he suspected its contents." *Id.* Third, the dissent dismissed as speculative any connection between the substance found packaged in the bag and the substance found on Ashcraft's knife.[5] *Id.* ¶ 50. The dissent viewed the inferences relied upon by the majority as "insufficient to establish beyond a reasonable doubt that Mr. Ashcraft exercised dominion and control over the green bag." *Id.* ¶ 52. Accordingly, the dissent would have reversed his convictions. *Id.* ¶¶ 53–54.

¶17   Here, Lucero was charged with and convicted of four crimes relating to the items found inside the sling backpack. The State's case against Lucero relied on theories of constructive possession. The State therefore had to put forward sufficient evidence to establish a nexus between Lucero and the backpack's contents. As noted above, *supra* ¶ 12, mere co-occupancy does not satisfy that burden and must be combined with other evidence before it can reasonably establish the requisite nexus. *See State v. Gonzalez-Camargo*, 2012 UT App 366, ¶ 17, 293 P.3d 1121.

¶18   On appeal, Lucero contends that the State failed to meet this burden. Specifically, he argues that, aside from his co-

---

5. The majority noted that the arresting officer "testified, based on his experience and results of field tests, that the 'brown caked tar[-]like powdery substance' on the blade of knife and in some of the baggies in the green bag was consistent with heroin." *Id.* ¶ 26 (alteration in original). However, according to the dissent, "the State presented no . . . evidence" to the effect that "the substance on the knife was the same as the illicit substance in the green bag." *Id.* ¶ 50. (Parrish, J., dissenting).

occupancy of the car in which the backpack was found, there was no evidence linking him to the backpack. The State responds that other evidence did exist: the backpack was within Lucero's convenient reach and Lucero denied ownership of the backpack.

¶19     These two facts track similar circumstances in *State v. Ashcraft*; namely, that the contraband containers in both cases were within reach of the defendants and both defendants denied ownership of the respective containers. *See* 2015 UT App 5. But in *Ashcraft*, the majority expressly rejected the idea that "anyone who has the misfortune of occupying a vehicle in which illegal drugs are found is subject to conviction." *Id.* ¶ 21 n.5. Instead, the supreme court detailed additional facts that suggested a nexus between Ashcraft and the bag before concluding that all of the evidence combined was sufficient for a jury to find beyond a reasonable doubt that Ashcraft constructively possessed the bag. *Id.* ¶¶ 22, 27 (explaining that the pieces of evidence were "suspect" and "a slim basis" for conviction individually but that, considered cumulatively, they were sufficient to sustain a jury verdict based on constructive possession).

¶20     It is true that both Ashcraft and Lucero could reach the contraband containers in the vehicles they were driving. But in *Ashcraft*, the jury also heard evidence to the effect that a knife carried by Ashcraft was caked in a tar-like substance that matched the substance found inside the bag. *Id.* ¶¶ 21, 26. And it is true that both Ashcraft and Lucero denied owning the containers. But unlike Lucero, Ashcraft did not merely deny ownership; rather, before the contents of the bag were even revealed, Ashcraft brashly accused the searching officer of planting the bag in his truck. *Id.* ¶ 25 (noting that Ashcraft's accusations suggested that he knew contraband would be found inside the bag). Moreover, Ashcraft was carrying an unusually large amount of cash, *id.* ¶ 21, and the police officer may have seen Ashcraft driving the truck through a drug-ridden area

multiple times on two successive nights, *id.* ¶ 21. *But see supra* ¶ 16 n.4.

¶21    *Ashcraft* instructs that the ability to reach a contraband container and the simple denial of ownership of that container are, in the absence of other corroborative evidence, insufficient to establish constructive possession beyond a reasonable doubt. This comports with the principle that constructive possession cannot be inferred from mere co-occupancy of the area where contraband is found. *See, e.g., Ashcraft*, 2015 UT 5, ¶ 20 & n.3; *State v. Workman*, 2005 UT 66, ¶¶ 33–35, 122 P.3d 639; *State v. Fox*, 709 P.2d 316, 320 (Utah 1985); *Gonzalez-Camargo*, 2012 UT App 366, ¶ 17; *State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct. App. 1991).

¶22    Considered alone, Lucero's co-occupancy of the car was an insufficient basis to attribute constructive possession of the sling backpack and its contents to him. *See Workman*, 2005 UT 66, ¶ 33 (explaining that shared occupancy of a bedroom was insufficient to establish constructive possession). We conclude that the other two pieces of evidence presented by the State to buttress the constructive-possession theory—that the backpack was within Lucero's reach and that Lucero denied owning it— do not constitute "other evidence sufficient to establish the defendant's knowing and intentional control over [the contraband]" beyond a reasonable doubt. *See Gonzalez-Camargo*, 2012 UT App 366, ¶ 17.[6]

---

6. At oral argument, the State noted that, after the contraband in the backpack had been discovered and Lucero had been arrested, Lucero's passenger claimed ownership of a purse containing drugs. The State suggests that it is unlikely that the passenger would carry both a purse and a bag. Even if we were to agree with the State, it would not change the result we reach.

CONCLUSION

¶23 We conclude that the State did not present evidence sufficient to demonstrate beyond a reasonable doubt that Lucero constructively possessed the backpack or its contents. We therefore reverse Lucero's convictions stemming from his purported constructive possession of the contents of the backpack: possession or use of a controlled substance, theft by receiving stolen property, possession of a dangerous weapon by a restricted person, and use or possession of drug paraphernalia.

––––––––––