2015 UT App 289

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEBBRAH JO CLARK,
Appellant.

Opinion
No. 20140262-CA
Filed November 27, 2015

Third District Court, West Jordan Department
The Honorable Mark S. Kouris
No. 131400401

Lori J. Seppi and Heather J. Chesnut, Attorneys
for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
JAMES Z. DAVIS and KATE A. TOOMEY concurred.[1]

PEARCE, Judge:

¶1      Debbrah Jo Clark appeals her conviction on one count of
theft by receiving stolen property, a third degree felony. *See* Utah
Code Ann. §§ 76-6-408, -412 (LexisNexis Supp. 2015). The State
charged Clark after a police officer recovered a stolen driver
license from the passenger seat of a truck in which Clark had
been riding. Clark appeals, arguing there was insufficient
evidence to connect her to the stolen license and that the district

---

1. Judge James Z. Davis participated in this case as a member of
the Utah Court of Appeals. He retired from the court on
November 16, 2015, before this decision issued.

court erred in denying her motion to suppress evidence. We affirm.

BACKGROUND

¶2     Christian Hale, an associate of Clark's, took Clark to a grocery store. Hale drove his single-cab pickup truck, while Clark sat on the passenger side of the truck's bench seat. They parked, entered the store, and placed several packages of diapers in a grocery cart. Clark returned to the truck, while Hale took the unpurchased diapers to the store's service desk and attempted to return them for a refund.

¶3     Because Hale lacked a receipt for the diapers, store personnel alerted Bobbie Davis, the store's loss prevention specialist. Davis reviewed security footage of the couple walking through the store and observed them placing the diapers in the cart. Davis also recognized Clark from a prior occasion when Clark had used "somebody else's identification" at the store. Davis called the police to report the attempted refund fraud and stopped Hale as he was leaving the store. Two police officers responded and took Hale into custody.

¶4     Davis told the officers that Clark was also involved in the refund fraud and that because Clark had previously used another person's identification, Davis was unsure of Clark's real name. The officers asked Davis to go to the parking lot and have Clark return to the store. By this time, Clark had moved Hale's truck across the parking lot and was lying down on the truck's bench seat, apparently sleeping with her head on the driver's side. Davis woke Clark, and the two returned to the front of the store, where Clark accurately identified herself to one of the responding officers, Officer Brower. The officers arrested Clark on outstanding warrants.

¶5     At this point, Hale remained in the back of a patrol car. Brower asked Hale what he wanted done with his truck. Hale gave Brower the keys with instructions to release the truck to one of Hale's friends. Brower used Hale's phone to locate someone willing to pick up the truck. Brower then waited by the truck for Hale's friend to arrive. As he waited, Brower looked through the passenger side window of the truck and saw a driver license lying face down on the passenger seat. Remembering that there might be some question about Clark's identity and thinking she would need her identification in light of her arrest, Brower opened the passenger door and retrieved the license. The license was not Clark's but instead belonged to another woman (Victim). The license had been sitting atop a recent paystub bearing Victim's name and address. A court document addressed to Clark was under the paystub. The stack of documents and the license were on the passenger side of the truck. Brower also observed an open purse on the passenger side floor of the truck, with items spilling out of it.

¶6     Brower contacted Victim, who stated that her purse had been stolen about a month earlier and that her driver license had been in the purse. Victim did not know Clark and had not authorized Clark or any other person to possess or use her driver license. Victim also indicated that she had never worked for the company that had issued the paystub in her name. Based on this information, the State charged Clark with theft by receiving Victim's stolen driver license.

¶7     Before trial, Clark filed a motion to suppress the evidence of the stolen driver license and paystub, arguing that Brower violated the Fourth Amendment to the United States Constitution when he retrieved the license from Hale's truck. The district court held an evidentiary hearing on Clark's suppression motion. Because Brower was unable to attend, Davis, the grocery store's loss prevention specialist, was the State's only witness at the hearing.

¶8    At the hearing, Davis testified about the events leading up to the discovery of Victim's driver license. Over Clark's hearsay objection, the district court allowed Davis to describe the exchange between Hale and Brower regarding Hale's truck. Davis testified that she had overheard the conversation and that officers had

> asked [Hale] what about his truck outside, what he wanted done with it. He said, My keys are in my pocket and they said is there anything in it we should be concerned about? He said no and they said, Do you mind if we take a look? He said no and he gave them the keys and that's—that was that.

The district court overruled Clark's hearsay objection, reasoning that reliable hearsay may be considered at suppression hearings. The district court then allowed further argument on whether the consent evidence should nevertheless be excluded as unreliable. After further hearings, the district court found that Davis's testimony was reliable. The court then denied Clark's motion to suppress, relying on Davis's testimony to find that Hale had consented to the search of his truck.[2]

¶9    Davis, Brower, and Victim were the only witnesses at Clark's jury trial. The State's only physical trial exhibits were the recovered license and paystub. Davis and Brower described the events surrounding Brower's discovery of the license. Victim described the theft of her purse and reiterated that Clark did not have her permission to possess her license. At the close of the State's case, Clark asked the district court for a directed verdict,

---

2. The district court also ruled that Clark had standing, under the Fourth Amendment, to challenge the search of Hale's truck. That ruling is not at issue on appeal.

arguing that the State had produced insufficient evidence to link her to the stolen license. The district court denied the motion.

¶10 The district court instructed the jury that it could find that Clark constructively possessed Victim's driver license if the jury found "a sufficient nexus between the defendant and the item to permit a factual inference that the defendant had the power and the intent to exercise control over the item." The district court also instructed the jury that it could consider the evidence that Clark had previously used "another person's identification" to evaluate Clark's intent but not as evidence of a criminal propensity. The jury convicted Clark on the single count of theft by receiving stolen property. Clark appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Clark argues that the State presented insufficient evidence to prove that she constructively possessed the stolen driver license found in Hale's truck. "'[W]e review the evidence in the light most favorable to the verdict, and do not overturn a jury's verdict of criminal conviction unless reasonable minds could not rationally have arrived at a verdict of guilty beyond a reasonable doubt based on the law and on the evidence presented.'" *State v. Shepherd*, 2015 UT App 208, ¶ 14, 357 P.3d 598 (quoting *State v. Bergwerff*, 777 P.2d 510, 511 (Utah Ct. App. 1989)). "We may only reverse a guilty verdict for insufficient evidence when that evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crimes underlying the convictions." *State v. Lucero*, 2015 UT App 120, ¶ 6, 350 P.3d 237.

¶12 Clark also argues that the district court erred in denying her motion to suppress because the court relied on inadmissible evidence to find that Hale had consented to the search of his truck. "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of

discretion . . . ." *State v. Gallup*, 2011 UT App 422, ¶ 12, 267 P.3d 289 (alteration in original) (citation and internal quotation marks omitted). Clark further argues that even if the consent evidence was admissible, it was not sufficiently reliable to support the district court's finding that Hale granted consent to search his truck. "When reviewing a district court's denial of a motion to suppress, the appellate court disturbs the district court's findings of fact only when they are clearly erroneous." *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

ANALYSIS

I. Sufficiency of the Evidence

¶13 A jury convicted Clark of theft by receiving stolen property. A person commits theft by receiving stolen property if she

> receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen, or . . . conceals, sells, withholds or aids in concealing, selling, or withholding the property from the owner, knowing the property to be stolen, intending to deprive the owner of it.

Utah Code Ann. § 76-6-408(1) (LexisNexis Supp. 2015). Clark argues that the evidence presented at trial was insufficient to demonstrate that she received or retained Victim's driver license, because the license was not found in her actual possession and the evidence at trial was insufficient to establish constructive possession.

¶14 The State did not contend that Clark actually possessed the stolen license but instead relied on a theory of constructive possession. "To establish constructive possession, the State must

'prove that there was a sufficient nexus between the accused and [an item] to permit an inference that the accused had both the power and the intent to exercise dominion and control over the [item].'" *State v. Gonzalez-Camargo*, 2012 UT App 366, ¶ 17, 293 P.3d 1121 (quoting *State v. Workman*, 2005 UT 66, ¶ 31, 122 P.3d 639). "Whether a sufficient nexus exists depends upon the facts and circumstances of each case." *Id.* (citation and internal quotation marks omitted).

¶15 Utah case law has identified several factors that may be useful in evaluating a conviction based on constructive possession: "whether the defendant owned or occupied the location where the contraband was found, whether the defendant had special or exclusive control over that area, any incriminating statements or behavior by the defendant, and previous possession of similar contraband by the defendant." *State v. Lucero*, 2015 UT App 120, ¶ 7, 350 P.3d 237; *see also Workman*, 2005 UT 66, ¶ 32 (providing that "presence of the defendant" near the location where the item was found and the defendant's proximity to the item are two factors, among others, that "may be important" in determining whether the nexus is sufficient). "This list is not exhaustive, nor is each factor always pertinent." *Lucero*, 2015 UT App 120, ¶ 7.

¶16 "[C]onstructive possession cannot be established solely by nonexclusive ownership or occupancy of the place where the contraband is found." *Id.* ¶ 12. Rather, a defendant's non-exclusive occupancy of the premises—or in this case, the vehicle—where an item is discovered "must be combined with other evidence sufficient to establish the defendant's knowing and intentional control" over the item. *Gonzalez-Camargo*, 2012 UT App 366, ¶ 17. In such cases, "the quantum of 'other evidence' needed to support an inference of power and intent to exercise dominion and control equals the quantum of evidence sufficient to eliminate reasonable doubt." *Lucero*, 2015 UT App 120, ¶ 13.

¶17    In this case, Victim's stolen driver license was discovered in Hale's truck. Although Clark had been the truck's most recent occupant, both Hale and Clark had recently occupied the truck and had access to the passenger seat where Brower found the license. Neither Clark nor Hale was present when the license was discovered. There was no evidence before the jury that anyone besides Hale or Clark had occupied or possessed the truck. These facts, viewed alone, could give rise to a reasonable inference that either Clark or Hale—or both—possessed the stolen license. But standing alone these facts are insufficient to establish Clark's possession of the license beyond a reasonable doubt. *See id.* ¶ 12; *State v. Ashcraft*, 2015 UT 5, ¶ 20 n.3, 349 P.3d 664 ("[I]f the *only* connection between a defendant and the contraband is bare title or mere occupancy of the area in which it is found, there may be substantial room for reasonable doubt as to whether the contraband belongs to the defendant.").

¶18    However, other evidence supports the jury's conclusion that Clark constructively possessed Victim's stolen license. The license was found on top of a paystub bearing Victim's name and address, leading to the reasonable inference that someone had used Victim's license to obtain the check, cash it, or both. Victim denied any knowledge of the check, and as between Clark and Hale, it was reasonable for the jury to infer that Clark, rather than Hale, would have used a woman's driver license to obtain employment or cash a paycheck in Victim's name.

¶19    Brower also found the license and paystub on top of a court document bearing Clark's name. On cross-examination, Brower confirmed that the license, paystub, and court document were "stacked together" on the seat of the truck. The discovery of Victim's license, the paystub, and Clark's court document together on the seat of the truck supports a reasonable inference that Clark had possessed all three items.

¶20    Finally, the jury heard evidence that Clark had previously used identification belonging to another person. The Utah

Supreme Court has identified a defendant's previous possession of similar contraband as a factor that may support a finding of constructive possession. *Cf. State v. Workman*, 2005 UT 66, ¶ 32, 122 P.3d 639 (listing "previous drug use" as a factor in evaluating a defendant's constructive possession of drugs). Here, the jury could have inferred that Clark's prior misuse of another's identification made it more likely that she intended to exercise dominion and control over Victim's license.[3]

¶21 Clark identifies various factors bearing on constructive possession that were present in other cases but are not present in this case. For example, in *State v. Workman*, the defendant's fingerprints were found on a container used in a drug laboratory, supporting her conviction for operating a clandestine laboratory. *See id.* ¶¶ 33–35. And in *State v. Martin*, the defendant was linked to methamphetamine found concealed in the seat crack of a police cruiser, when he was "the only person to occupy the back seat between the time the officer searched the patrol car at the beginning of his shift and the time the officer found the methamphetamine." 2011 UT App 112, ¶ 3, 251 P.3d 860. But not every constructive-possession case will present every factor that might bear on the question. *See Workman*, 2005 UT 66, ¶ 32 ("[T]hese factors are not universally pertinent, and

---

3. Clark argues the evidence of her prior use of false identification makes it *less* likely that she possessed Victim's driver license. Clark reasons that if she possessed Victim's license, she would have—consistent with her prior practice—used Victim's license as false identification in furtherance of her and Hale's diaper-refund scheme. Even if this inference can be considered reasonable, the jury could properly conclude that it was not a sufficiently strong inference to give rise to reasonable doubt. *Cf. State v. Ramirez*, 2012 UT 59, ¶ 13, 289 P.3d 444 ("The relative strength of the competing inferences in this case was a question for the jury at trial.").

we are mindful that no such list is exhaustive, and that listed factors are only considerations." (citation and internal quotation marks omitted)). Rather, the test is whether the evidence presented in any particular case is sufficient to "permit a factual inference that the defendant had the power and the intent to exercise control over the [contraband]." *State v. Lucero*, 2015 UT App 120, ¶ 7, 350 P.3d 237 (alteration in original) (citation and internal quotation marks omitted).

¶22   Here, Brower discovered Victim's driver license on the passenger side seat of a truck most recently occupied by Clark. The license was "stacked together" with a court document bearing Clark's name and was accompanied by a paystub, suggesting the license had been used to obtain and cash a paycheck in Victim's name. There was no evidence that anyone besides Clark or Hale ever occupied the truck or possessed the stolen license. From these circumstances, the jury could reasonably infer that Clark had used the license to pass herself off as Victim to obtain employment and cash the paycheck. The State also presented the jury with evidence that Clark had used false identification in the past. Viewing the evidence in its totality, and applying reasonable inferences in favor of the jury's verdict, "'reasonable minds could . . . rationally have arrived at a verdict of guilty beyond a reasonable doubt based on the law and on the evidence presented.'" *State v. Shepherd*, 2015 UT App 208, ¶ 14, 357 P.3d 598 (quoting *State v. Bergwerff*, 777 P.2d 510, 511 (Utah Ct. App. 1989)). Thus, sufficient evidence exists to support the jury's finding that Clark received or retained Victim's stolen driver license, beyond a reasonable doubt.

## II. Denial of Clark's Motion to Suppress

¶23   Prior to her trial, Clark sought to suppress the evidence Brower found in Hale's truck, claiming that Brower violated the Fourth Amendment to the United States Constitution when he entered the truck's cab without first obtaining a warrant. The district court denied Clark's motion to suppress because it found

that Hale had consented to a search of his truck. The court based its finding on Davis's testimony that she had overheard Hale tell officers that he did not mind if they looked in his truck. Clark argues that Davis's consent testimony should have been excluded from evidence as unreliable hearsay. She also argues that even if the district court properly admitted the hearsay evidence, the testimony was not sufficiently reliable to establish Hale's consent to the search.

¶24   "The Fourth Amendment to the United States Constitution guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Maxwell*, 2011 UT 81, ¶ 13, 275 P.3d 220 (alteration in original) (quoting U.S. Const. amend. IV). "Although a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citation omitted). A police officer's opening of a vehicle's door can constitute a search under the Fourth Amendment. *See id.* at 1135–36.

¶25   "Warrantless searches are per se unconstitutional under the Fourth Amendment unless conducted pursuant to a recognized exception to the warrant requirement." *State v. Bisner*, 2001 UT 99, ¶ 43, 37 P.3d 1073. One such exception is a search conducted with consent. *Id.* "Consent may come from the person whose property is to be searched, from a third party who has common authority over the property, or from a third party who has apparent authority to consent to a search of the property." *State v. Harding*, 2011 UT 78, ¶ 10, 282 P.3d 31 (citations omitted).

¶26   The district court ruled that Hale consented to a search of his truck when officers asked him if he minded if they "[took] a look" in the truck and Hale responded that he did not mind. Clark argues that Davis's description of this exchange constituted unreliable hearsay that should not have been

admitted into evidence at the evidentiary hearing.[4] Clark concedes that the Utah Rules of Evidence do not apply at pretrial suppression hearings, *see* Utah R. Evid. 104(a), and that the district court could properly rely on hearsay evidence so long as it was reliable, *see United States v. Matlock*, 415 U.S. 164, 175–77 (1974). However, Clark argues that Davis's testimony did not constitute "reliable" hearsay and should therefore have been excluded. *See id.*

¶27    Clark asserts that Davis's testimony was unreliable for a host of reasons. Clark argues that Davis was not a "neutral reporter," *see State v. Branch*, 743 P.2d 1187, 1189 (Utah 1987);[5] that Davis's testimony was "filtered" through her memory and recollection, *see id.*; and that Davis's memory may have been biased due to her negative history with Clark, her close ties to the prosecution, and her interest in seeing Clark prosecuted, *see id.*; *cf. State v. Ashe*, 745 P.2d 1255, 1270 (Utah 1987) (Durham, J.,

---

4. The State does not contest Clark's characterization of Davis's testimony as hearsay. *See* Utah R. Evid. 801(c) (defining hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement").

5. *State v. Branch*, 743 P.2d 1187 (Utah 1987), addressed a type of evidence—eyewitness identification testimony—that has its own very particular set of reliability issues. *See id.* at 1188–91. *See generally State v. Clopten*, 2009 UT 84, ¶ 49, 223 P.3d 1103 (providing that, in some circumstances, expert testimony on the reliability of an eyewitness identification should be "routinely admitted"); *State v. Ramirez*, 817 P.2d 774, 779–84 (Utah 1991) (discussing the reliability of eyewitness identification testimony following a suggestive police show-up). Factors that bear on the reliability of eyewitness identifications may or may not bear equally on other questions of reliability.

dissenting) (suggesting that officers "engaged in the often competitive enterprise of ferreting out crime" may fail to objectively evaluate the circumstances justifying an intrusion into a constitutionally protected area (citation and internal quotation marks omitted)). Clark relies on these factors to assert that Davis's testimony was unreliable because it was "self-serving" and "clearly in [the State's] interest." (Citation and internal quotation marks omitted.)

¶28   Clark also argues that the record raises serious doubts about the accuracy of Davis's testimony because her description of Hale's consent "was not corroborated," *see Roberts v. United States*, 399 F. Supp. 2d 650, 653 (D. Md. 2005), and was not "memorialized in [a] police report," *see United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986). She argues that Davis's testimony was "directly disputed" by Brower's preliminary hearing testimony, which made no mention of Hale explicitly granting consent, and by Brower's actions in failing to immediately search the truck after allegedly receiving consent. *See Roberts*, 399 F. Supp. 2d at 653. Finally, Clark argues that she was denied the opportunity to confront and cross-examine the officer—presumably Brower—who questioned Hale and elicited permission to search the truck.

¶29   Clark has assembled an impressive list of concerns that courts have expressed, in varying contexts, when assessing witness reliability or lack thereof. However, we are not convinced that the district court erred in finding Davis's testimony reliable in this case. *See State v. Price*, 827 P.2d 247, 250 n.6 (Utah Ct. App. 1992) ("We defer to the trial judge's determination '[b]ecause of the trial court's position of advantage to observe witnesses' demeanor and other factors bearing on credibility.'" (alteration in original) (quoting *Ashe*, 745 P.2d at 1258)). Although we acknowledge Clark's concerns about Davis's neutrality, Davis testified under oath and under penalty of perjury. Clark also had the opportunity to cross-

examine Davis about her perception and interpretation of Hale's statement, as well as about any bias that Davis may have had generally or against Clark in particular. During her cross-examination of Davis, Clark could have availed herself of the opportunity to explore the generalized concerns she now raises—that Davis was not a neutral reporter, that Davis's testimony was filtered through her memory, and that Davis was biased against Clark because of their previous interaction. But Clark did not develop that record. We could speculate that Davis's employment may have influenced her worldview such that one could surmise that she may not have been a completely neutral witness. But Clark has presented us with no reason to view Davis as so biased against her that we would, on appellate review, discount the district court's first-hand evaluation of Davis's credibility in relating Hale's statement of consent.

¶30   We also reject Clark's argument that Brower's preliminary hearing testimony contradicted Davis's testimony. Brower's testimony partially corroborates Davis's version of events—both witnesses testified that Hale voluntarily entrusted his truck and its keys to Brower. Further, because consent was not an issue at the preliminary hearing, neither the State nor Clark questioned Brower about Hale's indication of consent to search the truck.[6] Brower's failure to volunteer unrequested testimony about Hale's consent does not equate to testimony by Brower that Hale did *not* consent to the search of his truck.

¶31   The circumstances of this case do not establish that Davis's testimony was unreliable at all, much less so unreliable as to mandate its exclusion. We affirm both the district court's finding that Davis's testimony was reliable and its decision to admit the testimony.

---

6. Clark did not file her motion to suppress until after the preliminary hearing.

¶32 Clark also argues that, even if Davis's testimony was admissible, it was insufficiently reliable to support a finding of Hale's consent. Clark acknowledges that the district court's finding of consent is a factual finding that we will not overturn absent a showing that the finding is "clearly erroneous." *See State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. "[W]e will set aside a factual finding only if it is against the clear weight of the evidence or we reach a definite and firm conviction that a mistake has been made." *State v. Cater*, 2014 UT App 207, ¶ 10, 336 P.3d 32 (citation and internal quotation marks omitted).

¶33 In support of her argument that the district court's finding was clearly erroneous, Clark reiterates the same reasons and authority that she identified in arguing that Clark's testimony was inadmissible due to unreliability. For all of the reasons that we rejected Clark's inadmissibility argument, we also conclude that Davis's description of Hale's consent was sufficiently reliable to support the district court's consent finding.

CONCLUSION

¶34 Clark has failed to establish that the State's evidence was insufficient to convict her, as the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Clark received or retained Victim's stolen driver license. Clark has also failed to establish that the district court erred when it denied her motion to suppress.

¶35 Affirmed.

_____