385 P.2d 152

STATE of Utah, Plaintiff and Respondent,

v.

James B. DENNIS, Defendant and Appellant.

No. 9920.

Supreme Court of Utah.

Sept. 19, 1963.

A. H. Nebeker, Salt Lake City, for appellant.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Chief Justice.

Appeal from a forgery conviction. Affirmed.

The novel chronology of this case follows: Defendant contacted a police officer and told him he had written and cashed a check after having signed another's name as maker, and that he did so without authority. Further, that he was to be charged unless he paid the amount of the check. At the trial defendant confirmed most of this, as did the purported maker of the check.

In a statement to the jury defense counsel in substance said that his client had wanted to plead guilty, had confessed, would repeat such confession on the stand and would testify that he had been convicted of a prior felony when the questions

were put by the prosecutor. Counsel suggested that the question would be asked to demonstrate that defendant's testimony was not worthy of belief,—with the implication that such answer would justify the jury in disregarding his testimony and therefore find him not guilty. This odd approach was accompanied by counsel's statement that irrespective of what would eventuate at the trial, his client was not guilty and that "he did not forge that check." Counsel strongly urged the jury "to watch him when he testifies, because he didn't do it. He didn't forge that check." The defendant answered the questions as predicted, and the jury found him guilty. His appeal here seems to reflect the anomaly that defendant's counsel considered defendant innocent, and that the defendant thought his counsel was wrong, but that after the jury verdict and another stint at meditation, defendant became convinced that after all, his counsel was right,—that *he* was wrong, and that his attorney's suggestion that he was a fugitive from the truth may have had considerable merit.

Nonetheless, at the request of defendant, this Court assigned him other counsel, who most willingly, professionally and efficiently prosecuted this appeal, urging 1) insufficiency of the evidence, with which point we are constrained to disagree, after examining the record, that 2) the trial court, sua sponte, should have declared a mistrial after counsel's statement to the jury, and 3) that it was prejudicial error for the prosecutor to inquire of defendant whether he had been convicted previously of felony.[1]

We believe that declaring mistrials sua sponta at the end of counsel's statement to the jury must be indulged with a high degree of caution and circumspection on the part of a trial judge.[2] This case seems to be in point. When counsel made his unusual approach to the veniremen, a casual observer may have gasped and concluded that prejudice obviously would result after one's own counsel suggested that his client had more than average prevaricative proclivities. But in retrospect, after examining the record, it appears to be a not unthinkable possibility, knowing he was faced with an almost open and shut case, evidence-wise, but harboring a sincere personal conviction that his client was innocent, counsel may have used the only available strategem without throwing in the sponge.[3] The record does not reveal his reason for proceeding as he did, but by some possibility counsel's reason might have revealed the record of his client. It is not un-

1. Argued but not assigned as a point on appeal.
2. As stated in the State's brief: "The trial must be of such a low character as to render the trial a 'farce and a mockery.' People v. Dupree, 156 Cal.App. 2d 60, 319 P.2d 39 (1957)."
3. See State v. Farnsworth, 13 Utah 2d 103, 368 P.2d 914 (1962).

thinkable that counsel may believe or even have a hunch his client could be shielding someone, or choose to profess guilt for some other reason. More than one has chosen the penalty and stigma adjunct to conviction rather than attach them to a mother, father or other kin. A lawyer's job is to represent and defend his client in spite of his own feeling with respect to his client's guilt or innocence,—otherwise and simultaneously, he would don the robe of judge and claim membership on the jury, whereas, he is but liason between. The very tack taken here well may have developed a circumstance that would have created a reasonable doubt in the mind of at least one venireman and listed the boat away from a threatening tide. Who are we to say that from the stereotyped, usual modus operandi a lawyer in good standing cannot depart therefrom in an honest, firm belief that the course he pursues is for the best interests of his client? There have been many honest strategems less plausible than that employed here that seemed idiotic at the time to a bystander, but which resulted in arrival at the truth and the ac-

quittal of an innocent. In such cases the idiotic becomes the badge of genius, if victory results, but the stamp of incompetence on the part of counsel, if he loses,—all because we are humans, oft'times praiseful or critical, not in reason or logic, but based on result alone.

As to the urgence that the prosecutor's question as to previous felony conviction was prejudicially erroneous, we are inclined to believe that under the facts of this particular case, it may have been so, save for the fact that defendant, through counsel, admitted the prior conviction before testimony taken. Such pretestimony revelations are deemed by one school of thought in the criminal procedural atmosphere, to better serve the interests of the accused.[4] Under the facts of this case, we cannot conclude that the defendant was prejudiced by the question and answer when he had advised the jury beforehand what the question and answer would be.

McDONOUGH, CALLISTER, CROCKETT and WADE, JJ., concur.

4. State v. Holley, 34 N.J. 9, 166 A.2d 758, cert. denied 368 U.S. 854, 82 S.Ct. 89, 7 L.Ed.2d 51 (1961); Levin, Evidence, 1961 Ann.Sur. of Am.Law, 502 at 517 (1962).