**2019 UT App 9**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHAD JACOB ROBERTS,
Appellant.

Opinion
No. 20170616-CA
Filed January 10, 2019

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 161401733

Michael D. Esplin, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

POHLMAN, Judge:

¶1    Chad Jacob Roberts appeals his conviction for aggravated sexual abuse of a child and also seeks a remand under rule 23B of the Utah Rules of Appellate Procedure. We affirm Roberts's conviction and deny his motion for a rule 23B remand.

## BACKGROUND[1]

*Sexual Abuse, Disclosure, and Investigation*

¶2 Victim is the adoptive sister, and natural cousin, of Roberts. After their biological father relinquished his parental rights, Victim and her two older siblings (Sister and Brother) were adopted by Roberts's mother (Mother).[2] Roberts would frequently visit the house where Mother and Victim lived and would "cuddle" with Victim and Sister and read them books at bedtime. Often, Roberts would "fall asleep with them in the bed."

¶3 Once, when Victim was about seven years old and Roberts was in his mid-twenties, Roberts lay in Victim's bed and touched her vagina "skin-to-skin." He "cuddled up against [her] . . . with his body pressed against [her] back" and then "put his hand down [her] underwear." Roberts "patted" Victim's vagina "a few times" and then "just rested [his hand] there" before resuming patting. This pattern continued for about thirty minutes. Eventually, Victim "got out of bed and went in the bathroom" because she "did not like what was happening." Thinking that Roberts had fallen asleep, Victim crawled back into her bed. Again, Roberts "cuddled up against [her] and put his hand down [her] pants." He did not say anything to Victim, or try to kiss or digitally penetrate her.

¶4 Because she "still loved and cared about" Roberts and was "happy living at" Mother's house, Victim "decided [she]

---

1. "We recite the facts from the record in the light most favorable to the jury's verdict." *State v. Kohl*, 2000 UT 35, ¶ 2 n.1, 999 P.2d 7.

2. A court had already terminated the parental rights of the children's biological mother.

was never going to tell anyone" what had happened that night. Then, nearly ten years later, she disclosed the touching to Brother and his fiancée (Fiancée). Victim had moved out of Mother's house and was living with her father, who testified that, prior to the move, Victim "was struggling" and had received treatment for "self-harming behaviors." While Victim was visiting Mother's house one day, she and Brother started drinking alcohol mixed with an energy drink. Brother and Fiancée mentioned to Victim that they planned on "getting a place" with Roberts. This made Victim fear that Roberts would abuse Fiancée. Victim then became "very drunk," and Brother and Fiancée took her to the mall to "walk it off." While there, Victim became "hysterical," "[fell] over in the parking lot," and repeated "over and over" that Roberts had raped her. Once she calmed down, Victim explained to Brother and Fiancée that Roberts "used to come lay in bed with her and touch her at night," but she did not offer any more details.

¶5     After this disclosure and a report made by Brother, police interviewed Roberts. Roberts admitted that he would sleep in Victim and Sister's bunkbed and "cuddle with them," but he denied ever touching Victim inappropriately. The police investigator asked whether on the night in question he could have touched Victim's vagina "accidentally," and Roberts responded, "Possibly," but denied that it would have been for sexual gratification.

*Trial*

¶6     At trial, the defense called Mother, who testified that Roberts and Victim had a "[l]oving, caring" relationship. She also testified that, although Roberts would cuddle with Victim and Sister, their room was not far from hers and their doors were "[a]lways open." On cross-examination, the prosecutor asked Mother whether she was ever interviewed by the Division of Child and Family Services (DCFS) "about [her] being emotionally abusive to" Victim. After Mother testified that she

was aware of an accusation of emotional abuse but was not interviewed by DCFS, defense counsel objected to the line of questioning on relevance grounds. The trial court sustained the objection, and the prosecutor moved on to another topic.

¶7 Later, during closing argument, the prosecutor twice stated that Roberts's penis was "pressed up against" Victim's buttocks as he lay with her. The second time, after the prosecutor said that Roberts was "spooning with his front pushed against [Victim's] back with his penis around her buttocks," defense counsel objected. The trial court sustained the objection and explained to the jury that there was no evidence in the record of the "relative positions" of Roberts and Victim. The prosecutor then told the jury that it could use its "common sense understanding" to infer the relative positions of Roberts and Victim as they lay in the bed. Defense counsel did not renew the objection or ask the court to take any further action.

¶8 The defense's strategy at trial was to focus on Roberts's lack of sexual intent rather than attack the credibility of Victim, who had testified emotionally about the abuse. Roberts, who testified at trial, admitted that he cuddled with Victim and Sister and that he told police that he may have touched Victim's vagina accidentally, but he denied touching her with any sexual intent. In his closing argument, defense counsel stated that he did not think Victim was lying, and that the jury could believe both Victim and Roberts and still find Roberts not guilty. Counsel emphasized the isolated nature of the incident and argued that, because he did not have "the specific intent to arouse or gratify somebody's sexual desire," Roberts was not guilty.

¶9 At the close of evidence, the State asked the trial court "to expand [by one year] the time frame that was originally pled" in the information. Without hearing "much of an opposition" to such an amendment, the trial court granted the request. After being given instructions, including an instruction that counsel's "statements and arguments are not evidence," the jury retired to

deliberate. When it returned, the jury convicted Roberts of aggravated sexual abuse of a child. Roberts appeals.

ISSUES AND STANDARDS OF REVIEW

¶10 Roberts raises several issues on appeal that can be separated into three categories. First, Roberts contends that the prosecutor made improper statements during closing argument that warranted a mistrial or a limiting instruction. Defense counsel did not request these remedies at trial, and Roberts asks us to review this unpreserved issue under the doctrines of plain error and ineffective assistance of counsel.[3] *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (explaining that plain error and ineffective assistance of counsel are exceptions to the preservation requirement). A trial court plainly errs when it commits obvious, prejudicial error. *See State v. Griffin*, 2016 UT 33, ¶ 17, 384 P.3d 186. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *Id.* ¶ 16 (quotation simplified).

¶11 Second, Roberts contends that the prosecutor's inquiry of Mother about a DCFS investigation constituted prosecutorial misconduct and that defense counsel was constitutionally

---

3. Roberts first asserts that he preserved this issue by objecting to the prosecutor's closing argument. But he then proceeds to argue the issue under the rubrics of plain error and ineffective assistance of counsel. Although defense counsel objected to the prosecutor's statements at trial, he did not ask for either of the remedies to which Roberts claims he was entitled—a mistrial or a limiting instruction. Because Roberts did not seek these remedies below, he failed to preserve his arguments that he was entitled to such relief. *See State v. Hummel*, 2017 UT 19, ¶ 120, 393 P.3d 314; *State v. Chavez-Espinoza*, 2008 UT App 191, ¶ 25, 186 P.3d 1023.

ineffective for not objecting sooner and moving to strike the testimony.[4] This ineffective assistance claim again presents a question of law. *Id.*

¶12   Finally, Roberts raises a number of other ineffective assistance claims relating to defense counsel's choices not to request a bill of particulars and not to attack Victim's credibility, which he asserts require a remand under rule 23B of the Utah Rules of Appellate Procedure. "A remand under rule 23B will only be granted upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Calvert*, 2017 UT App 212, ¶ 56, 407 P.3d 1098 (quotation simplified).

ANALYSIS

I. Prosecutor's Comments During Closing Argument

¶13   Roberts first contends that the trial court "committed plain error by failing to sua sponte order a mistrial or by failing to give a limiting instruction to the jury" after the prosecutor twice remarked in closing that Roberts's penis was "pressed up against" Victim's buttocks. Alternatively, he contends that his defense counsel was constitutionally ineffective "by failing to move for a mistrial or request[] a specific" limiting instruction in response to those comments. We conclude, however, that a mistrial was not required here and that, even assuming a limiting instruction was required, the court adequately instructed the jury. We also conclude that Roberts's defense

---

4. Although Roberts objected at trial to the prosecutor's cross-examination, he allowed some questioning before objecting on relevance grounds and did not ask for a limiting instruction.

counsel was not ineffective in not requesting a mistrial or a limiting instruction.

A.     Plain Error

¶14     Not "every misstep of counsel in closing amounts to plain error." *State v. Hummel*, 2017 UT 19, ¶ 110, 393 P.3d 314. "We must ask first whether counsel's missteps were so egregious that it would be plain error for the district court to decline to intervene sua sponte." *Id.* (emphasis omitted). And our supreme court has long recognized that prosecutors have "considerable latitude in their closing arguments." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). Specifically, "[t]hey have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports," *id.*, and have "the duty and right to argue the case based on the total picture shown by the evidence," *State v. Houston*, 2015 UT 40, ¶ 76, 353 P.3d 55 (quotation simplified). Thus, the court "must be certain" that a prosecutor's statement is "both highly prejudicial and obviously" wrong before interrupting closing argument sua sponte. *Hummel*, 2017 UT 19, ¶ 119 n.35; *see also State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202 (observing that a "trial court should not assume the role of advocate" (quotation simplified)).

¶15     Intervening by declaring a mistrial is a particularly drastic remedy that is warranted "only when no reasonable alternatives" exist. *See West Valley City v. Patten*, 1999 UT App 149, ¶ 12, 981 P.2d 420. Indeed, declaring mistrials sua sponte "at the end of counsel's statement to the jury must be indulged with a high degree of caution and circumspection." *State v. Dennis*, 385 P.2d 152, 153 (Utah 1963). The Utah Supreme Court has suggested that any duty to sua sponte declare a mistrial would arise only if the underlying error "render[ed] the trial a farce and a mockery." *Id.* at 153 n.2 (quotation simplified).

¶16     Here, the prosecutor made two statements during closing argument describing Roberts's penis as being "pressed up

against" Victim's buttocks. Although Victim did not testify to these specific facts, the jury heard evidence that Roberts had "cuddled up *against* [Victim]" and was lying behind her in her bed with his body "*pressed against* the back of [her body]" and "*pressed up against* [her]" when he wrapped his arm around her and touched her vagina. (Emphases added.) Given the wide discretion afforded attorneys in closing argument and the reasonable inferences that could be drawn from the evidence about Roberts pressing against Victim, the prosecutor's statements were not so egregiously unreasonable that we can fault the trial court for not intervening and sua sponte declaring a mistrial.[5] *See Hummel*, 2017 UT 19, ¶ 110; *Dennis*, 385 P.2d at 153 & n.2.

¶17    Roberts alternatively suggests that the trial court plainly erred by not providing a limiting instruction in response to the prosecutor's closing argument. But after defense counsel objected to the prosecutor's statements, the court sustained his objection and gave some instruction to the jury. The court explained to the jury that the objection to counsel's argument was sustained because "no evidence regarding the size of the

---

5. In support of his argument, Roberts compares the prosecutor's comments to statements made during closing argument in *State v. Akok*, 2015 UT App 89, 348 P.3d 377, and *State v. King*, 2010 UT App 396, 248 P.3d 984. Even assuming that the statements made in *Akok* and *King* are comparable to those made by the prosecutor in this case, both cases are procedurally inapposite. *Akok* dealt with a preserved claim of prosecutorial misconduct; defense counsel there moved for a mistrial. 2015 UT App 89, ¶ 8. And in *King*, we stated that it was "not clear that the error would have been obvious to the trial court" but merely assumed it was for the purpose of resolving the issue based on lack of prejudice. 2010 UT App 396, ¶¶ 28–29. Thus, neither case helps Roberts establish that the trial court here plainly erred.

child versus the size of the adult was ever . . . proffered." Accordingly, the jury was specifically told there was no direct evidence on this point. The court also twice instructed the jury that counsel's statements, including closing argument, "are not evidence" and that it must rely on the evidence regardless of any conflict with counsel's statements. And on appeal, Roberts does not articulate why the court's instructions, taken as a whole, were inadequate. In light of the instructions that the trial court gave, and without some description of what more the court should have done, we are not persuaded that the court plainly erred in how it instructed the jury.

B.      Ineffective Assistance of Counsel

¶18    Having concluded that the trial court did not plainly err, we address Roberts's alternative contention that defense counsel was constitutionally ineffective when he "failed to request a remedy, either moving for a mistrial or requesting a curative instruction" in response to the prosecutor's statements. Although Roberts requests a rule 23B remand on this claim, it "is not necessary to remand" when the existing record "demonstrate[s] that counsel's performance was not deficient." *State v. Griffin*, 2015 UT 18, ¶ 42.

¶19    Proving deficient performance is a "heavy burden." *State v. Nelson*, 2015 UT 62, ¶ 11, 355 P.3d 1031 (quotation simplified). To meet that burden, Roberts "must overcome the strong presumption that his trial counsel rendered adequate assistance by persuading the court that there was *no conceivable tactical basis* for counsel's acts or omissions." *Id.* ¶ 10 (quotation simplified). In an analogous context, the Utah Supreme Court has recognized "the prerogative of opposing counsel to swallow their tongue instead of making an objection that might have the risk of highlighting problematic evidence or even just annoying the jury." *State v. Hummel*, 2017 UT 19, ¶ 110 & n.34, 393 P.3d 314. Indeed, several cases have recognized that the decision not to object at all may be a "legitimate strategic decision." *State v.*

*Bedell*, 2014 UT 1, ¶¶ 24–25, 322 P.3d 697; *see also State v. Houston*, 2015 UT 40, ¶ 76, 353 P.3d 55; *State v. Shepherd*, 2015 UT App 208, ¶¶ 52–53, 357 P.3d 598.

¶20    We likewise conclude that defense counsel's decision not to request a mistrial or a limiting instruction here was a legitimate strategic decision. Again, defense counsel did object, and the trial court sustained the objection and gave some correction to the jury, pointing out that there was no direct evidence of Roberts's and Victim's relative body positions. When the prosecutor then argued that his statements were a reasonable inference from the evidence, defense counsel may have been satisfied with the result because it highlighted the lack of direct evidence that Roberts's penis was pressed against Victim's buttocks. He also could have reasonably concluded that a mistrial would not be granted, given that the prosecutor's statements were not a wholly unreasonable inference from the evidence. Or counsel may have simply wanted to reserve for himself the right to argue inferences from the evidence during his own closing argument without increasing the likelihood of the State objecting in return. *See Shepherd*, 2015 UT App 208, ¶ 53. Thus, we conclude that defense counsel's performance was not constitutionally deficient, because there were conceivable tactical bases not to request a mistrial in this case. *See Nelson*, 2015 UT 62, ¶ 10.

## II. The Prosecutor's Cross-examination of Mother

¶21    We next turn to Roberts's contention that the prosecutor's cross-examination of Mother about a DCFS investigation into allegations that she had been emotionally abusive to Victim was improper and requires reversal of his conviction. The Utah Supreme Court recently clarified that an unpreserved claim of prosecutorial misconduct is not "a standalone basis for independent judicial review." *State v. Hummel*, 2017 UT 19, ¶ 111, 393 P.3d 314. Rather, unpreserved challenges of prosecutorial misconduct must be reviewed "under established

exceptions to the law of preservation," namely, plain error, exceptional circumstances, or ineffective assistance of counsel. *Id.* ¶¶ 102, 111.

¶22    Roberts has not asserted exceptional circumstances or plain error,[6] but he has argued that his prosecutorial misconduct claim should be reviewed under the rubric of ineffective assistance of counsel. Specifically, Roberts contends that defense counsel was ineffective "by failing to timely object" to this line of questioning and for not requesting that "the testimony be stricken."

¶23    To establish ineffective assistance of counsel, Roberts "must show both that counsel's performance was objectively deficient, and a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261 (quotation simplified). In practice, we

---

6. It was initially unclear whether Roberts asserted plain error or was relying on the now-defunct "standalone basis for direct review of the actions of prosecutors." *Hummel*, 2017 UT 19, ¶ 106 (quotation simplified); *see also id.* ¶ 111 (repudiating authority recognizing prosecutorial misconduct as a standalone basis for independent judicial review). After the State responded by analyzing the claim for plain error, Roberts removed all doubt by clarifying that he "did not claim that the trial court committed plain error" but that "the prosecutor's reference to [the] DCFS investigation constituted prosecutorial abuse justifying reversal of the conviction." Because Roberts has not asked for plain error review of this prosecutorial misconduct claim, and has not analyzed the issue under that standard, we will not review it for plain error. *See, e.g., Chavez-Espinoza*, 2008 UT App 191, ¶ 25 (refusing to address plain error where the defendant did not assert or adequately brief it).

often skip the question of deficient performance when a defendant cannot show prejudice. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *see, e.g.*, *Reid*, 2018 UT App 146, ¶ 20; *State v. Goode*, 2012 UT App 285, ¶ 7 & n.2, 288 P.3d 306. We follow that course here.

¶24 During cross-examination, the prosecutor asked Mother about a DCFS investigation into an allegation that she had emotionally abused Victim. Although defense counsel ultimately succeeded in terminating this line of questioning on relevance grounds, the jury heard Mother testify that she did not recall that her sister had accused her of emotionally abusing Victim and she denied that DCFS interviewed her about the allegation. Roberts contends that defense counsel performed deficiently by not objecting sooner or moving to strike the testimony. Without deciding whether defense counsel performed deficiently, Roberts has not shown that but for that testimony it is reasonably probable that he would have obtained a more favorable outcome at trial.

¶25 Roberts contends that as a result of defense counsel's delayed action, "the jury was able to hear inadmissible evidence prejudicial to [Mother's] credibility." But Roberts offers no further explanation of how the evidence prejudiced him. He states that "[w]ithout the inadmissible evidence, there would be a likelihood of a more favorable verdict," but his analysis ends there. Roberts does not explain how the jury would have viewed this relatively brief exchange or, even assuming the testimony undermined Mother's credibility, why Mother's testimony was important to Roberts's defense. Without more, Roberts "has failed to show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Reid*, 2018 UT App 146, ¶ 39

(quoting *Strickland*, 466 U.S. at 694). Therefore, his ineffective assistance claim fails.[7]

### III. Ineffective Assistance of Counsel and Rule 23B Remand

¶26    Finally, Roberts raises a number of other ineffective assistance of counsel claims, separate from those addressed above, which he contends either require reversal of his conviction or a remand to develop the record. As explained above, the test for ineffective assistance of counsel is objectively unreasonable performance and accompanying prejudice. *State v. Nelson*, 2015 UT 62, ¶ 10, 355 P.3d 1031. If there are inadequate "findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel," a party may move for remand to the trial court for entry of those facts. Utah R. App. P. 23B(a). But a remand under rule 23B is "available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*; *see also State v. Calvert*, 2017 UT App 212, ¶ 56, 407 P.3d 1098. This is

---

7. Based on both the prosecutor's closing argument and the cross-examination of Mother, Roberts asserts that his claims for prosecutorial misconduct should be reviewed under the cumulative error doctrine. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. McNeil*, 2013 UT App 134, ¶ 70, 302 P.3d 844 (quotation simplified), *aff'd*, 2016 UT 3, 365 P.3d 699. "By its nature, this doctrine has no application where only one error occurred." *State v. Cruz*, 2016 UT App 234, ¶ 78, 387 P.3d 618; *accord State v. Beverly*, 2018 UT 60, ¶¶ 80–81. Here, we see no error relating to the prosecutor's statements during closing argument and assume only one error relating to the prosecutor's cross-examination of Mother. Thus, we have no errors to accumulate.

because it "stands to reason that if the defendant could not meet the test for ineffective assistance of counsel, even if [the] new factual allegations were true, there is no reason to remand the case." *State v. Griffin*, 2015 UT 18, ¶ 20. Roberts has failed to show that a rule 23B remand would help him support any of his claims of ineffective assistance of counsel.

A.    Bill of Particulars

¶27    First, Roberts contends that defense counsel was "ineffective by not filing a bill of particulars" and a "demand for specific date, time and place of commission of offense."[8] He acknowledges that "time is not necessarily an element of the offense," but he asserts that "the State is required to provide as much evidence as it has." This is true, *see State v. Robbins*, 709 P.2d 771, 773 (Utah 1985), but there is nothing in the record to suggest that the State had information helpful to narrowing the time frame that it did not provide. Thus, defense counsel was not ineffective by not asking for a bill of particulars. *See State v. Johnson*, 2015 UT App 312, ¶ 16, 365 P.3d 730 (noting "the failure to file a futile motion" is not ineffective assistance of counsel).[9]

---

8. Relatedly, Roberts contends in the introduction of his opening brief that the trial court erred "in improvidently granting the State's oral motion to amend the Information by extending the alleged time of commission of the offense by an additional year." But this contention is never mentioned again. We therefore conclude that, to the extent Roberts intended to raise the issue, the issue is inadequately briefed, and we decline to address it further. *See, e.g.*, *State v. MacNeill*, 2017 UT App 48, ¶ 84, 397 P.3d 626 (concluding that an appellant failed to carry his burden of persuasion by failing to adequately brief an issue).

9. Although Roberts generally requests a rule 23B remand on his ineffective assistance of counsel claims, he does not specifically

(continued…)

B.      Decision Not to Challenge Victim's Credibility

¶28     Second, Roberts contends that defense counsel may have been ineffective for not challenging Victim's credibility at trial and seeks a remand to "be able to determine whether or not counsel had some strategy in abandoning the credibility issue." Specifically, Roberts raises the following related arguments:

- Defense counsel should have obtained Victim's medical records;
- Defense counsel should have investigated whether Victim suffered from reactive attachment disorder (RAD);
- Defense counsel should have called Sister as a witness to undermine Victim's account of sexual abuse;
- Defense counsel should have challenged Victim's credibility through the testimony of Brother and Fiancée; and
- Defense counsel should not have vouched for Victim in his closing argument by saying that he did not believe Victim was lying.

To support his arguments, Roberts includes an affidavit from a private investigator detailing that Sister never saw or experienced any inappropriate behavior herself and that Brother and Fiancée stated to the investigator that Victim is untruthful. Because these arguments all relate to defense counsel's decision not to attack Victim's credibility, we analyze them together and conclude that this claim does not require remand.

---

(…continued)

request a remand on this issue. Similarly, he does not allege facts that would support a claim that the State withheld available information that would have fixed the event in time with more specificity. *See* Utah R. App. P. 23B.

¶29    Ever since the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984),"[j]udicial scrutiny of counsel's performance [has been] highly deferential." *Id.* at 689. "Given the strong presumption of competence, we need not come to a conclusion that counsel, in fact, had a specific strategy in mind." *State v. Isom*, 2015 UT App 160, ¶ 37, 354 P.3d 791 (quotation simplified). "Instead we need only articulate some plausible strategic explanation for counsel's behavior." *Id.* (quotation simplified). Only when "no reasonable attorney" would pursue the chosen strategy will we determine that counsel has been constitutionally ineffective. *See State v. Ramos*, 2018 UT App 161, ¶ 36, 428 P.3d 334, *petition for cert. filed*, Oct. 3, 2018 (No. 20180791); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (noting courts "will not question" tactical decisions "unless there is no reasonable basis supporting them" (quotation simplified)).

¶30    Here, defense counsel reasonably chose not to attack Victim's credibility, focusing instead on Roberts's lack of sexual intent. The record reflects that, at least at one point, defense counsel considered the strategy Roberts advocates on appeal. For example, he intended to have Mother testify to Victim's character for truthfulness and introduce evidence that Victim received counseling and therapy for self-harming behavior. In addition, Mother informed defense counsel of her belief that Victim suffered from RAD. At trial, however, defense counsel abandoned this strategy. After Victim's apparently emotional testimony, during which Victim stated that she still loved Roberts and that it was "hard" for her to testify at trial, it was not unreasonable for defense counsel to decide that he did not want to attack Victim's credibility and appear unsympathetic to the jury.[10]

---

10. Defense counsel deferred his opening statement until after the State presented all of its evidence, including Victim's testimony. This decision suggests that counsel might have

(continued…)

¶31 We also note that this strategy was particularly reasonable here. Roberts testified at trial and had already admitted to police officers that he would often "cuddle" with Victim and would fall asleep in her bed. And although not a confession, he conceded it was possible that the touching Victim described could have happened "accidentally." With these facts, defense counsel could reasonably decide to focus on Roberts's intent, without challenging the details of Victim's story or appearing to attack a vulnerable witness. Some may question whether this was the best strategy. But "the question of deficient performance is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *State v. Nelson*, 2015 UT 62, ¶ 14, 355 P.3d 1031 (quotation simplified). Without persuading us that defense counsel's chosen strategy was unreasonable, Roberts cannot establish that remand in this case is necessary. *See State v. Griffin*, 2015 UT 18, ¶ 42; *State v. Garrett*, 849 P.2d 578, 581–82 (Utah Ct. App. 1993). We therefore deny his rule 23B motion.

CONCLUSION

¶32 The trial court did not plainly err when it did not sua sponte order a mistrial or give a limiting instruction in response to the prosecutor's closing argument; neither was Roberts's defense counsel constitutionally ineffective for not requesting that relief. We reject Roberts's other prosecutorial misconduct claim arising from the prosecutor's cross-examination of Mother because he did not assert it under the rubric of plain error and has not established ineffective assistance of counsel. Finally,

---

(…continued)
wanted to see the jury's reactions to Victim before he settled on his plan to attack her credibility.

Roberts's other claims of ineffective assistance do not demonstrate deficient performance, and his request for a rule 23B remand fails to acknowledge defense counsel's chosen strategy, which we conclude was reasonable. We therefore affirm Roberts's conviction and deny his rule 23B motion for remand.

––––––––––