2020 UT App 7

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAMES EDWARD GILLIARD,
Appellant.

Opinion
No. 20180519-CA
Filed January 3, 2020

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 171910231

Wendy Brown and Lacey C. Singleton, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     A seemingly routine traffic stop quickly turned into a high-speed chase, culminating in a crashed car, the discovery of two backpacks full of drugs and drug paraphernalia, and the conviction of James Edward Gilliard for a handful of crimes. Despite eyewitness testimony from two officers that Gilliard was the driver, and despite his picture and information appearing in a law enforcement database that was accessed during the traffic stop, Gilliard presents an ageless argument: It wasn't me. In particular, Gilliard contends that there was insufficient evidence of his identity as the perpetrator and of a connection between him and the drug-filled backpacks. He also contends that the

district court abused its discretion in postponing an evidentiary ruling. We affirm Gilliard's convictions.

BACKGROUND[1]

*The Traffic Stop and High-Speed Chase*

¶2      While monitoring traffic, a police officer (Officer One) saw a man and passenger drive by without their seatbelts on. As Officer One began to follow them in his patrol car, the car sped up to twenty miles per hour above the speed limit. This prompted Officer One to initiate a traffic stop, and the car pulled over into a gas station parking lot. After approaching the car, Officer One asked the driver—who was later identified as Gilliard—for his license and noticed that he and his passenger were "skittish" and "nervous." As Officer One talked with Gilliard, he observed Gilliard's general physical appearance and noticed his facial tattoos. After Gilliard handed Officer One his identification card, Officer One returned to his patrol car and ran the information on his computer. This search pulled up a skeleton record,[2] which displayed Gilliard's picture, physical description, and a notation that Gilliard's driver license had been

---

1. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Tulley*, 2018 UT 35, ¶ 4 n.1, 428 P.3d 1005 (cleaned up).

2. A skeleton record is an entry in the law enforcement database indicating a prior offense or that the person was previously pulled over for a driving citation but does not have a driver license. *See infra* ¶ 12; *see also Green v. State*, 710 So. 2d 862, 864 (Miss. 1998).

"denied." Officer One also ran the car's license plate and discovered that it was a rental car. Based on the circumstances of the stop, Officer One called for backup.

¶3     By the time a second officer (Officer Two) arrived, Officer One had returned to the stopped car. Officer One smelled marijuana and asked whether there was any in the car. Gilliard responded that there was. Meanwhile, Officer Two approached the car and observed Gilliard and his passenger. Officer One then ordered Gilliard to turn off the car and to step out. But Gilliard only turned off the car; he left the key in the ignition and refused to step out. Officer One again ordered Gilliard out of the car. Instead, Gilliard fired up the car and sped off. Officer One rushed back to his patrol car, described the rental car via radio, and followed another officer (Officer Three), who was directly behind Gilliard.

¶4     A high-speed chase ensued. During the chase, and after hearing a communication over the radio from Officer Three, Officer Two stopped and retrieved a black backpack from the middle of the road. The black backpack contained a scale, 2.3 grams of individually packaged heroin, and 7.5 grams of methamphetamine. As Officer Two stopped to collect the backpack, Officer One and Officer Three continued to pursue Gilliard. However, they eventually stopped because the "speeds were just too high for that area" and "presented too much of a danger to the public."

¶5     Shortly thereafter, the officers found the rental car abandoned a few blocks away, with a smashed front windshield. It appeared that the rental car had collided with a train-crossing arm. In the trunk, officers found a green backpack containing 13.6 grams of marijuana, 1.4 grams of heroin, and 25.4 grams of methamphetamine. The officers noted that the drugs in both backpacks were packaged in the same manner—inserted in the toe of some socks with the socks rolled up.

*The Trial*

¶6     The State charged Gilliard with two counts of possession of a controlled substance with the intent to distribute, one count of failure to respond to an officer's signal to stop, one count of possession of a controlled substance, one count of possession of drug paraphernalia, one count of reckless driving, and one count of failure to wear a seatbelt. The case proceeded to trial.

¶7     After jury selection and immediately before opening statements, defense counsel raised an objection to some potential testimony. Counsel specifically made an oral motion in limine to exclude testimony which certain officers were prepared to give: that Officer Three radioed to the other officers that he saw the black backpack being thrown out of the driver's side of the rental car. Counsel argued that this would be inadmissible hearsay and violate Gilliard's right to confront the witness against him because Officer Three was unavailable to testify.

¶8     The State argued that the statements were admissible. Specifically, the State asserted that the statements were not hearsay because they were not offered to prove the truth of the matter asserted; rather, their purpose was to explain why Officer Two stopped to collect the black backpack. Alternatively, the State argued that even if the statements were hearsay, they were admissible under the present-sense-impression and excited-utterance exceptions of rule 803 of the Utah Rules of Evidence. Finally, the State argued that Officer Three's statements were not testimonial and would not violate Gilliard's confrontation right.

¶9     The district court agreed with the State that the statements would fall under the present-sense-impression exception of rule 803, but because the issue had not been briefed and the court was not certain of the law, it deferred ruling on the confrontation issue so it could research the issue further. Defense counsel requested that the ruling be made prior to opening statements. But the case had been scheduled for a single day,

and to keep the trial on schedule, the court denied defense counsel's request. The court then told the attorneys that their opening statements should be based on "evidence that you have a good faith belief will come in during trial." The court also instructed the jury, "What the lawyers say is not evidence. For example, their opening statements and closing arguments are not evidence."

¶10 During its opening statement, the State told the jury, among other things, that it would hear that "Officer [Three] radioed that a bag had just been thrown from the car" and Officer One then directed Officer Two to retrieve the bag, which Officer Two did. After opening statements, the district court asked defense counsel if the confrontation issue should still be addressed before the witnesses testified, and defense counsel indicated that it should be. So, the court directed the attorneys to research the issue over the lunch hour, prepare their arguments, and present them after lunch. After hearing the arguments, the court ruled that Officer Three's statements were testimonial and that they were inadmissible, unless he became available to testify. Nevertheless, the court ruled that the State could have Officer Two offer a more limited explanation of why he went to the bag, such as a statement that "based on the information [Officer Two] received from Officer [Three], [he] stopped at the side of the road at this spot and picked up the bag."

¶11 The State then presented its case-in-chief. It put on evidence of the traffic stop, subsequent chase, drugs, drug paraphernalia, and the rental car to support the charges. In particular, Officer One testified that Gilliard was the driver of the rental car. He also explained that Gilliard's overall physical appearance and facial tattoos made him certain that Gilliard was the driver. Officer Two also testified that Gilliard was the driver of the rental car. He further testified that based on a communication that he heard over the radio, he stopped and found the black backpack in the middle of the road where Gilliard had just driven. The officers also testified about finding

the green backpack and its contents in the trunk of the crashed rental car shortly after the chase ended. Officer One additionally testified that drug dealers commonly use rental cars because "they're hard to track."

¶12 Gilliard's primary defense was that he was not the driver of the rental car. Gilliard also cross-examined the officers on their identifications and whether they saw the black backpack during the initial stop. He also pointed out that Officer One had testified at a preliminary hearing that Gilliard gave him a driver license, but Gilliard had never been issued one. In support of this, Gilliard called a records manager from the Utah Department of Public Safety, who testified that no Utah driver license had been issued to him. On cross-examination, however, the records manager explained that "when somebody doesn't have a driver[] license, and [is] pulled over for a driving citation, something called a skeleton record is created" in the database, and such a record would show up in a law enforcement search. The records manager confirmed that Gilliard had a skeleton record, and it included a notation that Gilliard's license had been denied. In response, Officer One clarified that the identification Gilliard gave him could have been a Utah identification card, rather than a driver license, because it would look similar to a driver license and would include the same information. Officer One further explained that he used the name and date of birth on the card to access Gilliard's skeleton record and that the displayed photograph and physical description matched Gilliard's physical appearance.

¶13 Gilliard moved for a directed verdict. In his motion, Gilliard argued that the evidence was insufficient to prove that he was the driver of the rental car. He also argued that the amount of drugs and drug paraphernalia did not support his distribution charge. Finally, he argued that the evidence showed that he did initially stop, contrary to his charge for failure to respond to an officer's signal. The district court denied the directed verdict motion and proceeded to give the jury

additional instructions. Among its other instructions, the court told the jury that it "must base its decision only on the evidence . . . . Evidence includes what the witnesses said . . . under oath and any exhibits admitted into evidence. Nothing else is evidence. The lawyers' statements and arguments are not evidence." (Cleaned up.) Additionally, the court told the jurors, "If the lawyers say something about the evidence that conflicts with what you remember, you are to rely on your memory of the evidence."

¶14 The jury acquitted Gilliard on one count of possession with intent to distribute, but it found him guilty on the six remaining charges. Gilliard appeals.

ISSUES AND STANDARDS OF REVIEW

¶15 Gilliard raises two issues: one attacking the sufficiency of the evidence and another asserting that the district court exceeded its discretion by not ruling immediately on Gilliard's oral motion in limine. Initially, we address whether there was sufficient evidence to support the jury's verdict. "In assessing a claim of insufficiency of the evidence, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645 (cleaned up). "And we will not reverse a jury verdict if we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (cleaned up).

¶16 Next, we analyze whether the district court exceeded its discretion when it postponed ruling on defense counsel's motion in limine until after opening statements. "A trial judge is accorded broad discretion in determining how a trial shall proceed in his or her courtroom." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 16, 163 P.3d 615 (quoting *University of Utah v.*

*Industrial Comm'n of Utah*, 736 P.2d 630, 633 (Utah 1987)). We therefore review such determinations for abuse of discretion.

ANALYSIS

I. Sufficiency of the Evidence

¶17 Gilliard contends that the evidence is insufficient to support his convictions. His contention is premised on two arguments. First, Gilliard argues that all his convictions should be reversed because the evidence of his identity as the driver of the rental car, which connects him to all the charges, is insufficient. Second, he argues that his convictions for possession of drug paraphernalia and possession of a controlled substance with the intent to distribute should be reversed based on the premises that "[t]he evidence was insufficient to prove that the black backpack or its contents belonged to" him and "[t]he evidence was similarly insufficient to establish [his] possession of the green backpack." We address these arguments below.

A.    Identity

¶18 "It is well-settled that an essential element that the government must prove beyond a reasonable doubt is the identification of a defendant as the person who perpetrated the crime charged." *State v. Cowlishaw*, 2017 UT App 181, ¶ 13, 405 P.3d 885 (cleaned up). In convicting Gilliard of the charged crimes, the jury determined that the identification element was met or, in other words, that Gilliard was indeed the driver of the rental car.

¶19 The evidence presented to the jury included testimony of Gilliard's identity. Both Officer One and Officer Two saw Gilliard during the traffic stop and later testified in court that Gilliard was the driver. Beyond these identifications, Officer One specifically remembered Gilliard's facial tattoo. Officer One also testified that when he ran the information from Gilliard's

identification card, it pulled up his matching photograph, matching physical description, and a message that read "denied." The records manager corroborated this by testifying that Gilliard had a skeleton record available on the law enforcement database with a message indicating that his driver license had been denied.[3]

¶20   Nevertheless, Gilliard zeroes in on inconsistent testimony related to his identification card. He argues that inconsistencies in the type of identification card—driver license versus state identification card—Officer One said he received from Gilliard, coupled with the lack of Gilliard's name being in the testimony, make the evidence insufficient. However, this ignores the well-established rule that "contradictory testimony alone is not sufficient to disturb a jury verdict." *Mackin v. State*, 2016 UT 47, ¶ 29, 387 P.3d 986 (cleaned up); *see also State v. Cady*, 2018 UT App 8, ¶ 23, 414 P.3d 974 ("There is perhaps no more axiomatic statement when reviewing jury verdicts than this: The choice between conflicting testimony is within the province of the jury." (cleaned up)); *State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644 ("The existence of a conflict in the evidence does not render the totality of the evidence insufficient. It is the role of the factfinder to examine and resolve such conflicts."). Moreover, Officer One addressed this issue in his trial testimony. He clarified that he

---

3. Neither officer used Gilliard's name during their testimony, and the State did not introduce evidence related to who rented the car. Gilliard criticizes the jury's verdict due to this lack of evidence. Although this evidence may have further substantiated a finding of the element of identity, it was far from required—especially where Officer One testified that he entered the name from the identification card into the computer, which revealed Gilliard's photograph and physical description. *See State v. Loveless*, 2008 UT App 336, ¶ 11, 194 P.3d 202 (explaining that the State is allowed "to determine in what manner to prosecute a case" (cleaned up)).

mistakenly said that the identification card was a driver license in the preliminary hearing because the two forms of identification look similar and because Gilliard's skeleton record appeared in the database. Thus, with full knowledge of this inconsistency, it was for the jury to apportion proper weight to Officer One's testimony, and we will not overrule the jury's decision on the matter.[4]

¶21    In sum, we conclude that sufficient "evidence exists from which a reasonable jury could find" that the element of Gilliard's identity was proven beyond a reasonable doubt. *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (cleaned up).

B.    Black and Green Backpacks

¶22    Gilliard insists that there is also insufficient evidence connecting him to the black and green backpacks. However, the State argues that Gilliard never presented this argument to the district court. We therefore address whether Gilliard's arguments related to the backpacks were preserved. Then, having concluded that they were not, we analyze whether it was plain error for the district court to submit the issues to the jury.

1.    Preservation

¶23    Generally, "to preserve an issue for appeal the issue must be presented to the [district] court in such a way that the [district] court has an opportunity to rule on that issue." *Pratt v.*

---

4. Additionally, the ultimate question is whether Gilliard was the perpetrator, not what form of identification he had. With the two officers' identifications of Gilliard and the testimony regarding Gilliard's matching picture and physical description in the record Officer One pulled up from the information on the identification card, we view the distinction between types of identification as inconsequential.

*Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (cleaned up). "Where a motion for a directed verdict makes general assertions but fails to assert the specific argument raised on appeal, the directed verdict motion itself is insufficient to preserve the more specific argument for appeal." *State v. Gallegos*, 2018 UT App 112, ¶ 14, 427 P.3d 578 (cleaned up). Moreover, "the appellant must present the legal basis for her claim to the [district] court, not merely the underlying facts or tangentially related claim." *State v. Kennedy*, 2015 UT App 152, ¶ 21, 354 P.3d 775 (cleaned up). The party must "state succinctly and with particularity the grounds upon which" relief is sought. *State v. Gonzalez*, 2015 UT 10, ¶ 24, 345 P.3d 1168 (quoting Utah R. Crim. P. 12).

¶24    In his directed verdict motion, Gilliard raised three points. He first argued that there was insufficient evidence that he was the driver, making the same arguments he pursued and we rejected above. He then argued that there was insufficient evidence that he intended to distribute the controlled substances, asserting that the amount of drugs, specifically the amount of heroin found, could have been for personal use. Finally, he argued that the driver of the rental car stopped at the officer's signal—at least initially—and that the State's case against him for failure to respond to an officer's signal to stop also failed based on his identity arguments. Importantly, Gilliard did not argue in his directed verdict motion that the evidence was insufficient to link him to the backpacks. Other than the issue of identity, Gillard made no other argument about the vehicle, its contents, or his connection to them. Gilliard did not mention the backpacks, or any other contents of the vehicle, at all in his directed verdict motion.

¶25    Gilliard asserts that his "argument on appeal need not be as narrow as trial counsel's argument as long as the appeal merely fleshes out trial counsel's objection," citing *Gallegos*, 2018 UT App 112. This argument is inapposite to Gilliard's situation. Gilliard's insufficient-evidence argument as to the connection

between him and the backpacks is not merely fleshing out the issues raised below; it is transforming them completely. Indeed, what below was an insufficient-evidence argument based on Gilliard's identity as the driver of the rental car cannot be swapped for the new argument Gilliard now propounds on appeal.

¶26   This court's two different holdings on preservation in *State v. Doyle*, 2018 UT App 239, 437 P.3d 1266, exemplify why Gilliard's argument for preservation falls short. In *Doyle*, we first concluded that the defendant's self-defense argument was preserved because he asserted that "the State had the burden to disprove self-defense" in his motion for a directed verdict and because it was his primary theory of defense throughout the trial. *Id.* ¶ 16. Conversely, we concluded that the defendant's inherent-improbability argument was not preserved. *Id.* ¶ 17. This was because "not every insufficiency challenge raises" the issue of inherent improbability, it was "a new legal theory" on appeal, and it was not clear from the context that such a challenge was being made at trial. *Id.* ¶ 19.

¶27 Here, like the defendant's inherent-improbability argument in *Doyle*, Gilliard's insufficient-evidence argument as to the backpacks is not a necessary condition of every insufficiency-of-the-evidence challenge. *See id.* Thus, other insufficiency arguments based on different grounds would not provide the district court the "opportunity to rule on that issue." *Pratt*, 2007 UT 41, ¶ 15 (cleaned up). It was not clear from the context of Gilliard's other directed verdict arguments that he wanted the court to rule on the sufficiency of the evidence connecting him to the backpacks. Indeed, he chose not to raise that specific argument despite raising other insufficient-evidence arguments. Therefore, those "tangentially related claim[s]" did not preserve this wholly separate issue merely because they were all based on the theory of insufficient evidence. *Kennedy*, 2015 UT App 152, ¶ 21.

¶28   Additionally, even though Gilliard argues that the district court's ruling that referenced the sufficiency of the evidence on "every element and all charges" served to preserve the issue, this ruling was made only in the context of Gilliard's specific arguments described above. Thus, the court was not ruling on the argument Gilliard now presents on appeal. *See True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 23, 427 P.3d 338 (explaining that "parties, not the courts, have the duty to identify legal issues and bring arguments . . . in a district court . . . to preserve argument for appeal" (cleaned up)). In short, by not presenting to the district court the specific argument of whether there was a sufficient nexus between Gilliard and the backpacks, Gilliard failed to preserve the legal theory he now attempts to advance on appeal.

2.   Plain Error

¶29   Alternatively, Gilliard urges us to review this issue for plain error. "A [district] court plainly errs when it commits obvious, prejudicial error." *State v. Roberts*, 2019 UT App 9, ¶ 10, 438 P.3d 885. "To establish plain error regarding the sufficiency of the evidence, an appellant must show first that the evidence was insufficient to support a conviction of the crimes charged and second that the insufficiency was so obvious and fundamental that the [district] court erred in submitting the case to the jury." *State v. Reyos*, 2018 UT App 134, ¶ 39, 427 P.3d 1203 (cleaned up). "An example is the case in which the State presents *no* evidence to support an essential element of a criminal charge." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶30   Drugs and drug paraphernalia were found in the black backpack, which was found in the middle of the road during the high-speed chase. The green backpack, found in the rental car, also held drugs. Citing *State v. Lucero*, 2015 UT App 120, 350 P.3d 237, and *State v. Salas*, 820 P.2d 1386 (Utah Ct. App. 1991), Gilliard argues that because he was not the sole

occupant of the rental car, there was insufficient evidence to prove his constructive possession of the drugs and drug paraphernalia such that it was plain error to submit the issue to the jury. "A defendant constructively possesses contraband when there is a sufficient nexus between the defendant and the contraband to permit an inference that the defendant had both the power and the intent to exercise dominion and control over it." *Lucero*, 2015 UT App 120, ¶ 7. However, "a nexus sufficient to establish constructive possession cannot be established solely by nonexclusive ownership or occupancy of the place where the contraband is found." *Id.* ¶ 12. "A defendant's joint occupancy of the premises where the contraband is discovered must be combined *with other evidence* sufficient to establish the defendant's knowing and intentional control over the contraband." *Id.* (cleaned up).

¶31 In *Lucero*, this court reversed several of the defendant's convictions because the State did not present sufficient evidence beyond the defendant's co-occupancy of the car to prove beyond a reasonable doubt that he constructively possessed the various nefarious items in a backpack. *Id.* ¶ 23. The "other evidence" linking the defendant to the backpack was limited to the backpack being within the defendant's reach and the defendant's denial of ownership of the backpack. *Id.* ¶ 22. Similarly, in *Salas*, this court reversed the defendant's conviction of drug possession because the only "other evidence" linking the defendant to the drugs was his part-ownership of the vehicle where the drugs were found, his presence in the vehicle, and an anonymous tip admitted to explain why the officers pulled the defendant over. 820 P.2d at 1388–89.

¶32 But these cases do not prompt us to reverse Gilliard's convictions because of the differing facts and standard of review that confront Gilliard. Indeed, those cases dealt with the sufficiency of the evidence on direct review, unlike the plain error review in which we engage here. *See State v. Bond*, 2015 UT

88, ¶ 45, 361 P.3d 104 (explaining that the plain error standard of review is not an easy one for defendants and that it encourages timely objections "by demanding strenuous exertion to get relief" (cleaned up)).

¶33 Although insufficient alone to establish constructive possession beyond a reasonable doubt—like in *Lucero* and in *Salas*—Gilliard's occupancy of the rental car linked him to the black and green backpacks. *See Lucero*, 2015 UT App 120, ¶ 22; *Salas*, 820 P.2d at 1389. The green backpack was found in the rental car, and there was testimony from which the jury could infer that the black backpack had been tossed from the rental car during the high-speed chase. And the fact that the black backpack was found in the middle of the road suggests that Gilliard, as the driver, handled the backpack or it was at least within his reach.

¶34 Yet, there was more incriminating "other evidence" in this case than the evidence against the defendants in *Lucero* and *Salas*. Beyond the defendant's mere denial of owning the backpack in *Lucero*, 2015 UT App 120, ¶ 22, Gilliard expressly admitted to Officer One that marijuana was in the rental car, and marijuana was ultimately found in the green backpack. No other marijuana was seen or found in the rental car at the traffic stop or when the officers found the abandoned rental car.[5] Thus, this was a much more incriminating statement. *See State v. Workman*, 2005 UT 66, ¶¶ 34–36, 122 P.3d 639 (concluding that the constructive-possession theory was sufficiently supported by the "other evidence" that went beyond mere co-occupancy, in part, because the defendant "admitted to buying some of the containers and glassware that were being used in the [meth] lab"). And this evinced that Gilliard knew the green backpack was in the trunk, knew the backpack contained marijuana, and

---

5. The record does not reflect that marijuana was found anywhere except in the backpack.

chose to drive the rental car with this knowledge. No such evidence was in the record against the defendants in *Lucero* or *Salas*.

¶35    Next, the backpacks were the same kind of bag, and the drugs in both backpacks were all packaged in the same manner—in the toe of socks with the socks rolled up—suggesting a similar possessor. Hence, any link between Gilliard and either of the backpacks strengthens a link between Gilliard and the other backpack. Finally, Gilliard's behavior was significantly more incriminating than the defendants' behavior in *Lucero* and *Salas*. Gilliard not only fled at the initial traffic stop, he also later ditched the rental car with the green backpack in it. And Gilliard was "skittish" and "nervous" when initially pulled over. Officer One also testified that drug dealers commonly use rental cars because "they're hard to track," which to some extent connects Gilliard to the backpacks and their narcotics-related contents. *See State v. Ashcraft*, 2015 UT 5, ¶¶ 21–22, 349 P.3d 664 (holding that the defendant's constructive possession of the bag was sufficiently supported by other evidence that included testimony that the defendant "repeatedly drove through an area known for drug activity during late night and early morning hours").

¶36    In short, while this evidence may not be overwhelming, because there was "other evidence" to buttress the constructive possession theory, we cannot conclude that a paucity of evidence was "so obvious and fundamental" that it was plain error for the district court to allow the issue of Gilliard's constructive possession of the drugs and drug paraphernalia to go to the jury. *Reyos*, 2018 UT App 134, ¶ 39 (cleaned up); *see also Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067 ("Circumstantial evidence alone may be sufficient to establish the guilt of the accused." (cleaned up)); *Workman*, 2005 UT 66, ¶ 35 (explaining that the pieces of evidence, taken alone, might not have been enough for a reasonable jury to find constructive possession, but the accumulation of them was).

## II. Evidentiary Ruling

¶37    Gilliard next contends that the district court abused its discretion in delaying its ruling on whether testimony about Officer Three's statements was admissible until after opening statements. We disagree. "A district court abuses its discretion only when its decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice or resulted from bias, prejudice, or malice." *Jones v. Layton/Okland*, 2009 UT 39, ¶ 27, 214 P.3d 859 (cleaned up).

¶38    This issue must be considered in context. Ultimately, the district court ruled that the statements of Officer Three were inadmissible—a conclusion with which Gilliard agrees. Accordingly, Gilliard does not assail the admission of any evidence. Instead, he rests his argument on the assertion that the mere exposure to the jury of the State's single reference to Officer Three's potential testimony in opening statements was so prejudicial and obviously inadmissible that the district court abused its discretion in not prophylactically precluding any mention of the testimony until it could definitively rule on the issue. However, the district court had various logical and reasonable reasons for delaying its ruling.

¶39    The court and counsel were not prepared with pertinent case law or fully fleshed out arguments when the issue was raised on the fly. In fact, the court specifically explained that it was unsure about whether the testimony would violate Gilliard's confrontation right and needed to research the issue. Recognizing that the trial schedule required that the trial proceed, the court moved forward with opening statements. It then advised the attorneys that they should base their statements on "evidence that [they] ha[d] a good faith belief w[ould] come in during trial" and used the lunch break to allow the court and counsel to research the issue. District courts exercise prudence when they make a concerted effort to arrive at fully informed decisions. Had the court simply made its best guess and ruled

based upon an incomplete understanding of the law, it would have run a significant risk of arriving at an erroneous conclusion of law. *E.g., Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 ("An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law . . . ." (cleaned up)). As a result, the issue as Gilliard presents it goes to the district court's management of the trial proceeding, an area where we afford district courts a large measure of deference. *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 16, 163 P.3d 615; *see also U.S.A. United Staffing All., LLC v. Workers' Comp. Fund*, 2009 UT App 160, ¶ 9, 213 P.3d 20 ("A trial judge is accorded broad discretion in determining how a trial shall proceed in his or her courtroom." (cleaned up)).[6]

¶40 Additionally, the court mitigated any prejudice through its instructions to the jury. It stressed to the jury that opening statements were not evidence, instructing, "What the lawyers say is not evidence. For example, their opening statements and closing arguments are not evidence." Finally, the court again made clear to the jury, before it deliberated, that opening statements are not evidence. The court instructed, "You must base your decision only on the evidence . . . . Evidence includes what the witnesses said . . . under oath and any exhibits admitted into evidence. Nothing else is evidence." And the court instructed the jury, "If the lawyers say something about the evidence that conflicts with what you remember, you are to rely on your memory of the evidence."

¶41 In light of these circumstances, we cannot say that the district court's decision to delay its evidentiary ruling was

---

6. We can potentially envision different circumstances, where a motion is brought prior to trial, in which a district court—depending upon the situation—may very well exceed its discretion if it fails to rule on the motion before trial. But those circumstances are not present here.

unreasonable. We therefore conclude that the district court did not exceed its discretion.[7]

## CONCLUSION

¶42    We conclude that there was sufficient evidence to support all of Gilliard's convictions as to his identity as the driver of the rental car. Furthermore, Gilliard's arguments related to the backpacks were not preserved, and it was not plain error to submit the drug charges to the jury. Finally, the district court did not abuse its discretion in delaying its evidentiary ruling under the specific facts of this case. We therefore affirm Gilliard's convictions.

───────────

7. Gilliard also argues that the State's comment in its opening statement constituted prosecutorial misconduct. But because Gilliard did not object on the basis of prosecutorial misconduct below, we review this issue only for plain error. *State v. Hummel*, 2017 UT 19, ¶ 111, 393 P.3d 314; *State v. Reid*, 2018 UT App 146, ¶ 40, 427 P.3d 1261 (stating that "when a defendant fails to raise the issue" of prosecutorial misconduct "before the district court, the law of preservation controls and we review the issues under established exceptions to the law of preservation" (cleaned up)). Given our conclusion that the district court did not abuse its discretion in delaying its ruling, and where counsel followed the express directions of the court, we are hard-pressed to conclude that the State's comment was "so egregious that it would [have been] plain error for the district court to decline to intervene *sua sponte*." *Hummel*, 2017 UT 19, ¶ 110 (cleaned up). Indeed, the court decided that the statements were inadmissible only after opening statements due to its undertaken research. Accordingly, we conclude that there was no plain error.